ALBERTO v TOYOTA MOTOR CORPORATION

Docket No. 296824. Submitted May 13, 2010, at Detroit. Decided August 5, 2010, at 9:00 a.m.

Lilia Alberto, personal representative of the estate of Guadalupe Alberto, deceased, brought an action in the Genesee Circuit Court against Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales U.S.A., Inc., and others, seeking damages in connection with a claim that a defect in a 2005 Toyota Camry driven by the decedent led to the sudden acceleration of the vehicle and thereby caused an accident that resulted in the decedent's death. Plaintiff noticed the video depositions of Yoshima Inaba, the chairman and chief executive officer of Toyota Motor Sales, and Jim Lentz, the president and chief operating officer of Toyota Motor Sales. Toyota Motor Sales moved for a protective order to prevent the depositions, claiming that neither Inaba nor Lentz had participated in the design, testing, manufacture, warnings, sale, or distribution of the 2005 Camry or the day-to-day details of vehicle production and that neither officer had unique information pertinent to issues in the case. Toyota Motor Sales also averred that plaintiff could not show that the depositions were necessary to prevent injustice, because the information sought could be obtained from those persons who worked directly on the design, testing, and manufacture of the vehicle. In response, plaintiff argued that the two corporate officers possessed information relevant to the case. The court, Archie L. Hayman, J., denied the motion, and Toyota Motor Sales sought leave to appeal the order. The Court of Appeals entered an unpublished order on March 10, 2010, that, in part, granted Toyota Motor Sales's motion for a stay of the depositions until further order of the Court (Docket No. 296824). On March 11, 2010, the Court of Appeals entered an unpublished order that, in part, granted the application for leave to appeal and continued in full force pending the resolution of the appeal the order that granted the stay of the depositions (Docket No. 296824). The order also directed the parties to address specifically whether the apex-deposition rule should or does apply to corporate defendants.

The Court of Appeals *held*:

1. The apex-deposition rule applies in Michigan cases to high-ranking officials in the public sector and to high-ranking corporate officers in the private sector. The rule provides that before a plaintiff may take the deposition of a high-ranking or "apex" governmental official or corporate officer, the plaintiff must demonstrate both that the governmental official or corporate officer possesses superior or unique information relevant to the issues being litigated and that the information cannot be obtained by a less intrusive method, such as by deposing lower-level officials or employees. The rule applies as follows. After the party opposing the deposition demonstrates by affidavit or other testimony that the proposed deponent lacks personal knowledge or unique or superior information relevant to the claims at issue, the party seeking the deposition of the high-ranking corporate officer or public official must demonstrate that the relevant information cannot be obtained absent the disputed deposition. This procedure does not shift the burden of proof to the party seeking discovery because if the defendant and the potential deponent make the requisite showing, only then must the party seeking the deposition show that the potential deponent has unique or superior knowledge of issues relevant to the litigation and that that information cannot be obtained by less intrusive means.

2. Neither Inaba nor Lentz had any actual knowledge, much less a unique or superior knowledge, of the design, engineering, manufacturing, or testing processes that went into the building of the vehicle, and both had only generalized knowledge of the sudden-acceleration problem that had resulted in the recall of certain Toyota vehicles, not including the vehicle driven by the decedent.

3. The trial court abused its discretion by denying Toyota Motor Sales's motion for a protective order to quash the depositions. The order denying the motion must be vacated, and the case must be remanded to the trial court for reconsideration.

Vacated and remanded.

JANSEN, J., dissenting, stated that, given Michigan's existing discovery rules that adequately protect high-ranking corporate officers and their respective corporations from potential discovery abuses, Michigan does not need a broad apex-deposition rule to shield high-ranking corporate officers from abusive or burdensome discovery. The decisions in *Fitzpatrick v Secretary of State*, 176 Mich App 615 (1989), and *Hamed v Wayne Co*, 271 Mich App 106 (2006), which involved attempts to depose high-ranking governmental officials, were concerned with protecting the public's interest in the service of governmental employees

and do not compel the creation of a new apex-deposition rule for high-ranking corporate officers. Judge JANSEN would also conclude that, under the existing rules of civil discovery, the trial court properly denied the motion for a protective order to quash the depositions. Plaintiff demonstrated a strong probability that Inaba and Lentz possessed personal knowledge of particular information relevant to the litigation in this case. Their depositions likely would have led to the discovery of relevant, admissible evidence and would not have been annoying, embarrassing, oppressive, unduly burdensome, or unduly expensive. There was no showing that the depositions would have been abusive. Toyota Motor Sales failed to carry its burden to establish that a protective order was warranted under MCR 2.302(C). The trial court's order should be affirmed.

PRETRIAL PROCEDURE — DEPOSITIONS — APEX-DEPOSITION RULE — CORPORATE OFFICERS.

The apex-deposition rule applies in Michigan to high-ranking officials in the public sector and to high-ranking corporate officers in the private sector; the rule provides that, before a plaintiff may take the deposition of a high-ranking or apex governmental official or corporate officer, the plaintiff must demonstrate both that the governmental official or corporate officer possesses superior or unique information relevant to the issues being litigated and that the information cannot be obtained by a less intrusive method, such as by deposing lower-level officials or employees; when the party opposing the deposition demonstrates by affidavit or other testimony that the proposed deponent lacks personal knowledge or unique or superior information relevant to the claims at issue, the party seeking the deposition must demonstrate that the relevant information cannot be obtained absent the disputed deposition.

*Hilborn & Hilborn, P.C.* (by *George Hilborn*); *Thomas J. Murray & Associates* (by *Thomas J. Murray*); *Edgar F. Heiskell, III*; *Bailey & Glasser, LLP* (by *Benjamin L. Bailey, Eric B. Snyder,* and *Robert P. Lorea*); *Lewis & Babcock* (by *A. Camden Lewis*); and *Bendure & Thomas* (by *Mark R. Bendure*) for Lilia Alberto.

*Bowman and Brooke LLP* (by *Lawrence C. Mann, Andrea L. Moody,* and *Carmen M. Bickerdt*), for Toyota Motor Sales U.S.A., Inc.

Amicus Curiae:

*Dickinson Wright PLLC* (by *Robert W. Powell, Phillip J. DeRosier,* and *Michael D. Bossenbroek*), and *Hugh F. Young, Jr.,* for Product Liability Advisory Council, Inc.

Before: SAAD, P.J., and JANSEN and DONOFRIO, JJ.

SAAD, P.J. Defendant Toyota Motor Sales U.S.A., Inc.,[1] appeals by leave granted the trial court's order that denied its motion for a protective order to quash the depositions of two corporate officers, Yoshimi Inaba and Jim Lentz. We vacate the trial court's order and remand this case for further proceedings.

I. FACTS AND UNDERLYING PROCEEDINGS

This is a personal-injury, products-liability suit wherein plaintiff seeks to depose two high-ranking Toyota corporate officers in connection with the claim that a defect in a Toyota vehicle caused the accident that resulted in the death of plaintiff's decedent.

Plaintiff filed this wrongful-death action and claimed that the decedent drove a 2005 Toyota Camry at a speed of less than 25 miles an hour when the vehicle suddenly accelerated to a speed in excess of 80 miles an hour. Plaintiff also asserts that the decedent attempted unsuccessfully to apply the vehicle's brakes, but the vehicle struck a tree, went airborne, and struck another tree, and plaintiff's decedent sustained fatal injuries.

Plaintiff noticed the video depositions of Yoshimi Inaba, defendant's chairman and chief executive officer,

---

[1] The other named defendants were dismissed from plaintiff's lawsuit and are not parties to this appeal. References to "defendant" in the singular throughout this opinion are to defendant-appellant Toyota Motor Sales U.S.A., Inc., only.

and Jim Lentz, defendant's president and chief operating officer, pursuant to MCR 2.306 and MCR 2.315. Defendant moved for a protective order pursuant to MCR 2.302(C) to prevent the depositions, because defendant says that neither Mr. Inaba nor Mr. Lentz "participated in the design, testing, manufacture, warnings, sale, or distribution of the 2005 Camry, or the day-to-day details of vehicle production," and that neither officer had "unique information pertinent to issues in the case." Defendant also avers that plaintiff could not show that the depositions of Messrs. Inaba and Lentz were necessary to prevent injustice, because the information plaintiff sought could be obtained from those persons who worked directly on the design, testing, and manufacture of the vehicle at issue. Defendant noted that Michigan adheres to the so-called "apex-deposition rule" for high-ranking governmental officials, observed that various federal and state courts had applied the apex-deposition rule to high-ranking corporate officers in addition to governmental officials, and argued that Michigan should do so as well.

In response, plaintiff argues that while Michigan has adopted the apex-deposition rule for public officials, it has not applied the apex-deposition rule in connection with high-ranking corporate officers, and that even if Michigan were to adopt the apex-deposition rule for corporate officers, it should not apply here. Plaintiff contends that Mr. Lentz has been the "public face" of Toyota as the company's safety problems became widely known and emphasized that Mr. Lentz had made numerous public appearances and testified before Congress regarding Toyota's recent recalls of vehicles.[2] Plaintiff also noted that Mr. Inaba had testified before Congress regarding Toyota's efforts to complete its

---

[2] The recent recalls do not involve the vehicle at issue here.

current recalls and review its quality-control processes and had said that he would be involved in the quality-control review.

Though the trial court found that Messrs. Inaba and Lentz were apex, or high-ranking, corporate officers, the trial court held that Michigan's caselaw and court rules did not preclude the depositions from taking place.

Defendant sought leave to appeal in this Court and moved for immediate consideration and a stay of the depositions. Ultimately, this Court granted defendant's application and continued in effect a prior order of the Court that had stayed the depositions of Messrs. Inaba and Lentz. The Court also ordered the appeal expedited and directed the parties to "address specifically the issue of whether the apex deposition rule should or does apply to corporate defendants." *Alberto v Toyota Motor Corp*, unpublished order of the Court of Appeals, entered March 11, 2010 (Docket No. 296824).

II. NATURE OF THE CASE AND THE APEX-DEPOSITION RULE

This appeal presents the question whether Michigan should formally adopt the apex-deposition rule in the corporate context. As used by other state and federal courts, the apex-deposition rule provides that before a plaintiff may take the deposition of a high-ranking or "apex" governmental official or corporate officer, the plaintiff must demonstrate both that the governmental official or corporate officer possesses superior or unique information relevant to the issues being litigated and that the information cannot be obtained by a less intrusive method, such as by deposing lower-ranking employees. See, e.g., *Baine v Gen Motors Corp*, 141 FRD 332, 334-335 (MD Ala, 1991).

Courts have applied the apex-deposition rule not to shield high-ranking officers from discovery, but to sequence discovery in order to prevent litigants from deposing high-ranking governmental officials as a matter of routine procedure before less burdensome discovery methods are attempted. See, e.g., *Sneaker Circus, Inc v Carter*, 457 F Supp 771, 794 n 33 (ED NY, 1978). Courts have reasoned that giving depositions on a regular basis would impede high-ranking governmental officials in the performance of their duties, and thus contravene the public interest. See, e.g., *Union Savings Bank v Saxon*, 209 F Supp 319, 319-320 (D DC, 1962). In essence, the apex-deposition rule prevents high-ranking public officials from being compelled to give oral depositions unless a preliminary showing is made that the deposition is necessary to obtain relevant information that cannot be obtained from another discovery source or mechanism. *Baine*, 141 FRD at 334-336.

Premised on similar reasoning, several federal appellate and district courts have extended application of the apex-deposition rule to high-ranking corporate executives. Generally, these cases hold that before a high-ranking corporate executive may be deposed, the plaintiff must establish that the executive has superior or unique information regarding the subject matter of the litigation and that such information cannot be obtained through a less intrusive method, such as by deposing lower-ranking executives. See, e.g., *Salter v Upjohn Co*, 593 F2d 649, 651 (CA 5, 1979); *Lewelling v Farmers Ins of Columbus, Inc*, 879 F2d 212, 218 (CA 6, 1989); *Thomas v Int'l Business Machines*, 48 F3d 478, 482-484 (CA 10, 1995); *Mulvey v Chrysler Corp*, 106 FRD 364, 366 (D RI, 1985); *Baine*, 141 FRD at 334-336; *Evans v Allstate Ins Co*, 216 FRD 515, 518-519 (ND Okla, 2003).

State courts, including those in California and Texas, have also adopted the apex-deposition rule in the corporate context. For example, in *Liberty Mut Ins Co v San Mateo Co Superior Court*, 10 Cal App 4th 1282, 1289; 13 Cal Rptr 2d 363 (1992), the California Court of Appeal, relying on federal decisions such as *Salter*, *Mulvey*, and *Baine*, adopted the apex-deposition rule in the corporate context and held that the potential deponent, the president and chief executive officer of Liberty Mutual, could not be deposed absent a showing that the officer had "unique or superior personal knowledge of discoverable information." The *Liberty Mut* court held that absent such a showing, "the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less intrusive methods." *Id.* If after these less intrusive methods are exhausted and the plaintiff makes a showing that the apex officer has information relevant to the case, the trial court may allow the deposition to proceed. *Id.* Similarly, in *Monsanto Co v May*, 889 SW2d 274, 277 (Tex, 1994), the Texas Supreme Court, relying on federal decisions such as *Salter* and *Mulvey* and on the decision in *Liberty Mut*, adopted the apex-deposition rule and held that the rule "presents a fair balance between the right of a plaintiff to conduct discovery in its case within the limits of the rules, and the right of someone at the apex of the hierarchy of a large corporation to avoid being subjected to undue harassment and abuse."

The question posed by Toyota's motion and the trial court's order is whether Michigan caselaw should take into account the position within an organization of the person sought to be deposed. Because Michigan's court rules contemplate such a rule and because our courts have, in essence, applied the principles of the apex-deposition rule to governmental officials, albeit, with-

out using the aforementioned terminology, and because there is no principled reason for not affording similar safeguards to corporate defendants, we hereby adopt the apex-deposition rule as explained more thoroughly below.

### III. ANALYSIS

We hold that the apex-deposition rule applies to high-ranking officials in the public sector and to high-ranking corporate officers in the private sector.

Michigan has a broad discovery policy that permits the discovery of any matter that is not privileged and that is relevant to the pending case. MCR 2.302(B)(1); *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). However, Michigan's court rules acknowledge the wisdom of placing reasonable limits on discovery. MCR 2.302(C) provides, in part:

> On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:
>
> (1) that the discovery not be had;
>
> (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place[.]

Michigan's rules of discovery largely track the federal discovery rules.[3] In the absence of Michigan precedent, courts of this state routinely seek guidance from federal

---

[3] FR Civ P 26(c) provides for the issuance of a protective order in discovery proceedings.

cases construing a similar federal rule. *Brenner v Marathon Oil Co*, 222 Mich App 128, 133; 565 NW2d 1 (1997).

This Court has applied the apex-deposition rule, while not referring to it as such, in two cases involving governmental officials. In *Fitzpatrick v Secretary of State*, 176 Mich App 615, 617-618; 440 NW2d 45 (1989), this Court reversed the trial court's order that denied the defendant's motion to quash the deposition of the Secretary of State on the grounds that the Secretary of State lacked personal knowledge of the relevant facts and that the information sought could be obtained by other means. More recently, in *Hamed v Wayne Co*, 271 Mich App 106, 109-110; 719 NW2d 612 (2006), this Court reversed the trial court's order that denied the defendants' motion to quash the depositions of the Wayne County Executive and the Wayne County Sheriff on the ground that the plaintiff had made no showing that either official possessed relevant information that could not be obtained through other methods.

We find that application of the apex-deposition rule in the public sector and private corporate context is consistent with Michigan's broad discovery policy, *Reed Dairy Farm*, 227 Mich App at 616, and with Michigan's court rules, which allow a trial court to control the timing and sequence of discovery "for the convenience of parties and witnesses and in the interests of justice," MCR 2.302(D), and to enter protective orders "for good cause shown," MCR 2.302(C). As noted, in *Fitzpatrick*, 176 Mich App at 617-619, this Court reversed the trial court's denial of a motion for a protective order to preclude the taking of the deposition of the Secretary of State. The *Fitzpatrick* Court did not specifically state that the Secretary of State could be deposed if the plaintiff could show that doing so would be necessary to

prevent injustice. However, in *Hamed*, 271 Mich App at 112, this Court adopted the holding in *Fitzpatrick* and clarified that depositions of governmental officials could be taken upon a showing by the plaintiff that the depositions were necessary "to prevent prejudice or injustice[.]" These cases rely on the Michigan Court Rules, see, e.g., *Fitzpatrick*, 176 Mich App at 617, and *Hamed*, 271 Mich App at 109-110, and the analysis employed in *Fitzgerald* and *Hamed* is consistent with those federal and state court cases that have applied the apex-deposition rule in the corporate context.

Recognizing that the highest positions within a juridical entity rarely have specialized and specific first-hand knowledge of matters at every level of the complex organization, courts have adopted the apex-deposition rule in the corporate context to (1) promote efficiency in the discovery process by requiring that before an apex officer is deposed it must be demonstrated that the officer has superior or unique personal knowledge of facts relevant to the litigation, see *Salter*, 593 F2d at 651, and (2) prevent the use of depositions to annoy, harass, or unduly burden the parties. See *Lewelling*, 879 F2d at 218; *Baine*, 141 FRD at 335-336. Of course, no court has applied the apex-deposition rule to hold that an apex or high-ranking corporate officer cannot be deposed under any circumstances. And neither do we. Rather, courts have applied the rule to ensure that discovery is conducted in an efficient manner and that other methods of discovery have been attempted before the deposition of an apex officer is conducted. See, e.g., *Salter*, 593 F2d at 651-652; *Liberty Mut*, 10 Cal App 4th at 1287-1289. Moreover, those cases adopting the apex-deposition rule in the corporate context do not shift the burden of proof, but merely require the party seeking discovery to demonstrate that the proposed deponent has unique personal knowledge of the subject matter of

the litigation and that other methods of discovery have not produced the desired information *only after* the party opposing discovery has moved for a protective order and has made a showing regarding the lack of the proposed deponent's personal knowledge and that other discovery methods could produce the required information. Cf. *Crest Infinity II, LP v Swinton*, 2007 OK 77, ¶ 17; 174 P3d 996, 1004 (2007) (declining to adopt a form of the apex-deposition rule that shifts the burden to the party seeking discovery on the ground that the burden of showing good cause is statutorily placed on the party seeking discovery). In other words, after the party opposing the deposition demonstrates by affidavit or other testimony that the proposed deponent lacks personal knowledge or unique or superior information relevant to the claims in issue, then the party seeking the deposition of the high-ranking corporate officer or public official must demonstrate that the relevant information cannot be obtained absent the disputed deposition.

Application of the apex-deposition rule does not, contrary to plaintiff's argument, shift the burden of proof to the party seeking discovery. If the defendant and the potential deponent make the requisite showing outlined above, only then must the party seeking the deposition show that the potential deponent has unique or superior knowledge of issues relevant to the litigation and that the information cannot be obtained by less intrusive means, such as by deposing lower-level officials or employees. Moreover, nothing herein can or should be read to preclude the deposition of high-ranking public or corporate officials who possess relevant personal knowledge of matters in issue that cannot be obtained by other allowable discovery.

In adopting the apex-deposition rule, we recognize, as have other courts, that an apex corporate officer, like a

high-ranking governmental official, often has no par-
ticularized or specialized knowledge of the day-to-day
operations or the particular factual situations that lead
to litigation, and has far-reaching and comprehensive
employment duties that require a significant time com-
mitment. And, therefore, to allow depositions of high-
ranking governmental officials or corporate officers
without any restriction or conditions could result in the
abuse of the discovery process and harassment of the
parties. Accordingly, our adoption of the apex-
deposition rule should serve as a useful rule for trial
courts to use in balancing the discovery rights of the
parties.

### IV. APPLICATION

We review for an abuse of discretion a trial court's
decision on a motion for a protective order. *Bloomfield
Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 35;
654 NW2d 610 (2002).

Defendant moved for a protective order on the
ground that neither Mr. Inaba nor Mr. Lentz had
unique, personal knowledge of facts relevant to the
litigation.[4] Plaintiff points to the fact that both Messrs.
Inaba and Lentz have made public appearances to
discuss Toyota's safety difficulties and recall efforts.
But no evidence before us demonstrates that, during

---

[4] We note that defendant also based its motion for a protective order on
the ground that plaintiff had engaged in no discovery efforts designed to
elicit the information she sought from Messrs. Inaba and Lentz. At the
time the trial court heard defendant's motion, plaintiff had deposed a
former employee of defendant Toyota Motor Engineering & Manufactur-
ing North America, Inc., a company that had no involvement in the
design or manufacturing of the vehicle at issue. The fact that plaintiff has
engaged in other discovery, including the taking of depositions, since the
hearing on defendant's motion, is irrelevant to the issue before us at this
time.

those appearances, either officer demonstrated any actual knowledge, much less a unique or superior knowledge, of the design, engineering, manufacturing, or testing processes that went into the building of the vehicle, a 2005 Camry. The executives spoke in only general terms about Toyota's safety difficulties and recall efforts.[5]

In terms of plaintiff's contention that Messrs. Inaba and Lentz had general knowledge of the issues, the instant case is analogous to *In re Continental Airlines, Inc*, 305 SW3d 849 (Tex App, 2010). In *Continental*, the plaintiffs filed suit following an accident involving a Continental Airlines flight that injured 37 persons. *Id*. at 851. The plaintiffs noticed the deposition of Larry Kellner, Continental's chief executive officer (CEO) and chairman of the board of directors, arguing that Kellner had unique or superior knowledge of discoverable information regarding the accident. *Id*. The plaintiffs pointed to the following facts: (1) Kellner briefed members of the media immediately following the accident, (2) Kellner repeatedly stated that he would learn the cause of the accident in order to prevent future accidents, (3) Kellner sent personal letters to the passengers, (4) Kellner interviewed the pilots and gave commendations to crew and flight members, and (5) Kellner served on the board of directors of the Air Transport Association of America (ATA), a safety organization, and thus had knowledge regarding Continental's implementation of the ATA's policies. *Id*.

The trial court denied the defendant's motion for a protective order and granted the plaintiffs' motion to compel the deposition. *Id*. The defendant moved for a writ of mandamus, asking the appellate court to compel

---

[5] As stated earlier, the recall campaigns about which Messrs. Inaba and Lentz spoke did not include the 2005 Camry.

the trial court to set aside its order granting the motion to compel the deposition. *Id.* at 850-851.

The appellate court reviewed the pertinent law and the evidence, including statements made by other Continental employees in depositions and statements in Kellner's own affidavit, *id.* at 853-857, and found that the defendant showed that Kellner did not have "unique or superior knowledge regarding what occurred before and during the accident or the cause of the accident." *Id.* at 858. The court noted that while Kellner made public statements following the accident, the information he provided was given to him by another Continental employee; that Kellner was not Continental's representative with regard to the investigation by the National Transportation Safety Board (NTSB); that Kellner had not received information regarding the cause of the accident in his executive briefs; and that Kellner did not serve as Continental's representative on the ATA's safety committee. *Id.*

Furthermore, the *Continental* court found that the plaintiffs had not demonstrated that less intrusive methods were inadequate to obtain the discovery sought, notwithstanding the fact that the plaintiffs in *Continental*, unlike plaintiff here, had conducted extensive discovery, including submitting 110 requests for production and 74 interrogatories and taking 11 depositions. *Id.* at 859. The court noted that Continental had asserted that the plaintiffs had not deposed Continental's corporate representative, other individuals were present when Kellner received information regarding the accident, and other employees were more directly involved in the NTSB investigation. *Id.* The court reasoned that, while Kellner would be "best able to address his own subjective intent in making his generalized public statements following the accident," Kell-

ner's "subjective intent in making the subject public statements [did] not establish anything regarding negligence, proximate cause, or damages." *Id.* The *Continental* court held that the trial court had abused its discretion by compelling Kellner's deposition, and directed the trial court to set aside the order compelling the deposition. *Id.* Here, in contrast, virtually no discovery preceded the disputed efforts to depose Messrs. Inaba and Lentz.

We note that the CEO in *Continental* was in a position similar to that of the Toyota executives here, Messrs. Inaba and Lentz. The Continental CEO had generalized knowledge of the accident and served as the airline's public face in dealing with the media, but had no particular knowledge of the cause of the accident. The record reflects that Messrs. Inaba and Lentz had only *generalized* knowledge of Toyota's unintended acceleration problems and had no unique or superior knowledge of, or role in designing, the vehicle at issue or in implementing manufacturing or testing processes. The court's reasoning in *Continental* is instructive and applicable to the proposed deponents here.

V. CONCLUSION

We adopt the apex-deposition rule for high-ranking corporate officers, as well as for governmental officials,[6] and therefore hold that the trial court abused its discretion by denying defendant's motion for a protective order to quash the depositions of Messrs. Inaba and Lentz. We vacate the trial court's order and remand this case to the trial court for reconsideration in accordance with this opinion.

---

[6] *Fitzpatrick,* 176 Mich App at 617-618; *Hamed,* 271 Mich App at 109-110.

Vacated and remanded. We retain jurisdiction.

DONOFRIO, J., concurred.

JANSEN, J. (*dissenting*). I cannot join the majority's announcement of a broad, new "apex-deposition rule" shielding high-ranking corporate officers from certain discovery in Michigan litigation. Nor can I conclude, under existing principles of Michigan law, that the trial court abused its discretion by denying defendant's[1] motion for a protective order to quash the scheduled depositions of Yoshimi Inaba and Jim Lentz. Accordingly, I must respectfully dissent.

I

As explained by the majority, plaintiff noticed the video depositions of Inaba, defendant's chairman and chief executive officer, and Lentz, defendant's president and chief operating officer, pursuant to MCR 2.306 and MCR 2.315. Defendant moved for a protective order under MCR 2.302(C), seeking to prevent the scheduled depositions for the reason that neither Inaba nor Lentz "participated in the design, testing, manufacture, warnings, sale, or distribution of the 2005 Camry, or the day-to-day details of vehicle production." Defendant also asserted that neither Inaba nor Lentz possessed "unique information pertinent to the issues in this case" and argued that the so-called "apex-deposition rule" should be extended to shield high-ranking corporate officers from certain discovery in Michigan.

Plaintiff responded by arguing that although Michigan's courts had occasionally applied something similar to the apex-deposition rule in the context of high-

_____

[1] I use the term "defendant" throughout this dissenting opinion to refer to defendant-appellant Toyota Motor Sales U.S.A., Inc., only.

ranking governmental officials, the rule had never been applied to shield corporate officers from discovery. Plaintiff contended that Inaba and Lentz possessed specific information relevant to this case and argued that defendant's motion for a protective order should therefore be denied. In particular, plaintiff asserted that Inaba and Lentz had failed to share with the government and the public certain information in their possession concerning the phenomenon of "sudden acceleration" in Toyota vehicles. Plaintiff pointed to a letter from two congressmen alleging that Toyota had concealed information regarding this sudden-acceleration problem. Plaintiff also pointed to certain public statements by Inaba suggesting that Toyota had saved $100 million by concealing information regarding sudden acceleration and to certain portions of Inaba's testimony before Congress in which he testified that he was personally involved in the quality-control review of Toyota vehicles. Plaintiff argued that this evidence, taken together, was sufficient to show that Inaba and Lentz personally possessed information relevant to the litigation and that their depositions were therefore warranted. Plaintiff also argued that she could not obtain the desired information by deposing other lower-level employees because some of the information was uniquely within the possession of Inaba or Lentz and because several of the statements and representations at issue had been made by Inaba or Lentz directly.

After oral argument, the trial court ruled that Inaba and Lentz were high-ranking corporate officers, but determined that Michigan law did not preclude plaintiff from deposing them. Specifically, the court observed, "[W]ith the documents [plaintiff] presented, it certainly would appear that [Inaba and Lentz] are in the know as to the issues that . . . [plaintiff is] concerned about in this particular case; and so I do think it is appropriate

for [plaintiff] to depose them at this time." For the reasons that follow, I believe that the trial court's ruling on this issue was correct.

II

As an initial matter, I cannot join the majority's announcement of a broad, new apex-deposition rule shielding high-ranking corporate officers from certain discovery in Michigan civil litigation. The majority's announcement of this new rule is neither necessary nor warranted on the facts of this case. It is well settled that Michigan law *already authorizes* a trial court to enter protective orders and restrict discovery in order to prevent "annoyance, embarrassment, oppression, or undue burden or expense . . . ." MCR 2.302(C); *Eyde v Eyde*, 172 Mich App 49, 56; 431 NW2d 459 (1988). Similarly, Michigan's trial courts are *already authorized* to restrict discovery that would be abusive, excessive, or irrelevant, *Hartmann v Shearson Lehman Hutton, Inc*, 194 Mich App 25, 29; 486 NW2d 53 (1992), and to limit discovery for the purpose of preserving a litigant's privacy rights, see *Yates v Keane*, 184 Mich App 80, 84; 457 NW2d 693 (1990). Within the confines of these rules, Michigan's trial courts have "broad discretion to issue protective orders to prevent . . . potential abuses[.]" *Marketos v American Employers Ins Co*, 185 Mich App 179, 197; 460 NW2d 272 (1990).

Because I believe that these existing principles of law are already adequate to protect high-ranking corporate officers and their respective corporations from potential discovery abuses, I dissent from the majority's adoption of a broad apex-deposition rule in this case. I fully acknowledge that, on occasion, certain litigants may seek to depose high-ranking corporate officers who truly lack personal knowledge of the relevant facts. At

times, such litigants may actually be driven by a desire to annoy or embarrass the high-ranking corporate officers or to unnecessarily prolong the discovery process. But more commonly, I suspect, such litigants are simply mistaken about their belief that the high-ranking corporate officers at issue personally possess any relevant information. Whatever the litigants' motivations, however, our present rules of civil discovery are more than sufficient to curtail any undue burden, expense, or annoyance that might result from such discovery requests. See MCR 2.302(C). Given our existing discovery rules, Michigan does not need a broad apex-deposition rule to shield high-ranking corporate officers from abusive or burdensome discovery. The new apex-deposition rule announced by the majority today is quite simply unnecessary.

Nor do I believe that the majority's new apex-deposition rule for corporate officers is merely a logical outgrowth of this Court's decisions in *Fitzpatrick v Secretary of State*, 176 Mich App 615; 440 NW2d 45 (1989), and *Hamed v Wayne Co*, 271 Mich App 106; 719 NW2d 612 (2006). In *Fitzpatrick*, this Court reversed the trial court's order denying the defendant's motion to quash the deposition of the Secretary of State. *Fitzpatrick*, 176 Mich App at 618-619. The *Fitzpatrick* Court observed that the Secretary of State lacked personal knowledge of the relevant facts and that the information sought by the plaintiff could be obtained through other means. *Id.* Similarly, in *Hamed*, this Court reversed the trial court's order denying the defendants' motion to quash the depositions of the Wayne County Executive and the Wayne County Sheriff. *Hamed*, 271 Mich App at 110-112. The *Hamed* Court based its holding on the fact that the plaintiff had not established that the information she sought was not available from other discovery sources, such as lower-

ranking county officials. *Id.* at 111-112. Defendant and the majority appear to believe that this Court's decisions in *Fitzpatrick* and *Hamed* naturally lead to, and somehow compel, the creation of a new apex-deposition rule for high-ranking corporate officers.

However, a faithful reading of *Fitzpatrick* and *Hamed* reveals a critical distinction between the circumstances of those cases and the circumstances of the case at bar. In *Fitzpatrick* and *Hamed,* this Court was concerned with protecting the public's interest in good government. Both the *Fitzpatrick* Court and the *Hamed* Court pointed out that the public has a strong interest in the effective and efficient operation of governmental agencies, and both panels suggested that allowing a litigant to depose a high-ranking governmental official without first making a showing of actual need might hinder the effective functioning of that official's office. See *Fitzpatrick,* 176 Mich App at 617 (explaining that "the time and exigencies of an agency head's everyday business would be severely impeded if every plaintiff filing a complaint against an agency head, in his official capacity, was allowed to take his oral deposition" and that "[s]uch a procedure is against the public interest"); *Hamed,* 271 Mich App at 111 (observing that "[t]he purpose of this heightened scrutiny is to strictly limit the intrusions that would burden the public official's efforts to advance the effective and efficient operation of the public agency"). I agree with the statement of plaintiff's counsel at oral argument before this Court that "the very purpose of the *Fitzpatrick* and *Hamed* rule is to protect a public interest—the public interest in the service of the [governmental] employee." No such public interest is implicated in the present case; there is generally no public interest in the management and operation of private corporations. I cannot conclude

that the rationale underlying this Court's decisions in *Fitzpatrick* and *Hamed* applies in the case at bar.

In sum, I believe that Michigan's existing rules of civil discovery are fully adequate to protect high-ranking corporate officers and their respective corporations from potential discovery abuses, and I cannot conclude that the majority's creation of a new apex-deposition rule for high-ranking corporate officers is in any way compelled by this Court's decisions in *Fitzpatrick* and *Hamed*.[2]

III

I also conclude that, under our existing rules of civil discovery, the trial court properly denied defendant's motion for a protective order to quash the depositions. "It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). Our civil discovery rules "should be liberally construed to promote the discovery of the true facts and circumstances of the controversy rather than to aid in their concealment." *Dowood Co v Mich Tool Co*, 14 Mich App 158, 161; 165 NW2d 450 (1968).

Plaintiff, through her reliance on certain statements, documents, and other evidence presented in the trial

---

[2] Even under the apex-deposition rule adopted by the majority, I would still conclude that plaintiff is entitled to depose Inaba and Lentz. "[T]he apex deposition rule is intended to protect busy, high-level executives who lack unique or personal knowledge" and "is bottomed on the apex executive lacking *any* knowledge of relevant facts." *Minter v Wells Fargo Bank, NA*, 258 FRD 118, 126 (D Md, 2009). In light of the public statements and representations made by Inaba and Lentz, it is clear that they possessed *at least some* personal knowledge of the information sought by plaintiff in this case.

court, demonstrated a strong probability that Inaba and Lentz possessed personal knowledge of particular information relevant to the litigation in this case. Specifically, plaintiff established a high likelihood that Inaba and Lentz possessed relevant, personal knowledge concerning the phenomenon of sudden acceleration in Toyota vehicles and that they also had personal knowledge of possible efforts to conceal or obscure the scope and breadth of this problem. Thus, unlike the appellants' discovery requests in *In re Hammond Estate*, 215 Mich App 379, 386; 547 NW2d 36 (1996), plaintiff's requests to depose Inaba and Lentz did not amount to mere "fishing expedition[s]." Instead, the record establishes that plaintiff had in mind certain specific matters that she wished to pursue during the depositions. These matters clearly would have been pertinent and material to the present controversy. I recognize that the Toyota Camry model driven by plaintiff's decedent was apparently not among the models subject to recall for sudden acceleration. However, plaintiff was nonetheless entitled to ask Inaba and Lentz about their knowledge of sudden acceleration in other, similar Toyota models. See *Savage v Peterson Distrib Co, Inc*, 379 Mich 197, 202; 150 NW2d 804 (1967); *McNamara v E W Ross Co*, 225 Mich 335, 339-340; 196 NW 336 (1923). And even if Inaba and Lentz only possessed knowledge pertaining to sudden acceleration in *unrelated* Toyota models, plaintiff was still entitled to ask them about this matter in order to establish that defendant was on notice of the problem of sudden acceleration in general. *Dowood*, 14 Mich App at 161. I conclude that the depositions of Inaba and Lentz likely would have led to the discovery of relevant, admissible evidence. *Domako v Rowe*, 438 Mich 347, 359 n 10; 475 NW2d 30 (1991).

I also conclude that the depositions of Inaba and Lentz would not have been annoying, embarrassing,

oppressive, unduly burdensome, or unduly expensive under MCR 2.302(C), which is primarily intended to protect parties from discovery "abuses." See *Marketos*, 185 Mich App at 197. The party opposing discovery of a certain matter generally has the burden of showing why the request for discovery should be denied. See *Wilson v Saginaw Circuit Judge*, 370 Mich 404, 413; 122 NW2d 57 (1963). In the present case, there was simply no showing that plaintiff's depositions of defendant's officers would have been "abus[ive]."

The standard for judging whether a protective order should issue under MCR 2.302(C) surely cannot be a subjective one. After all, no one generally *wants* to give a deposition, and under a subjective standard it could almost always be argued that a proposed deposition would subject the deponent to "annoyance" or "embarrassment" within the meaning of MCR 2.302(C). Instead, the standard clearly must be an objective one. Thus, Inaba's and Lentz's own beliefs that the scheduled depositions would be annoying, embarrassing, or burdensome certainly were not sufficient for the issuance of a protective order in this case.

Moreover, Inaba and Lentz made several public statements and representations suggesting that they *uniquely* possessed certain information that was relevant to this litigation. And the very nature of these public statements implied that other, lower-level employees *did not* have knowledge of the same facts. Given the substance of Inaba's and Lentz's public statements, and viewed objectively, I cannot say that plaintiff's depositions of Inaba and Lentz would have been any more annoying, embarrassing, oppressive, or burdensome than any other deposition of any other deponent possessing relevant, discoverable information. While it might be annoying, embarrassing, oppressive, or bur-

densome to depose high-ranking corporate officers whose knowledge of the relevant facts is merely coextensive with that of lower-level employees, the public statements and representations made by Inaba and Lentz in this case implied a unique, singular knowledge concerning the phenomenon of sudden acceleration in Toyota vehicles and the possible effort to conceal or obscure this problem. Defendant failed to carry its burden of establishing that a protective order was warranted under MCR 2.302(C). See *Wilson*, 370 Mich at 413.

Lastly, I wish to make clear my belief that high-ranking corporate officers should be held to the same civil discovery standards as any other deponent, witness, or party. Indeed, I believe that our law demands this. It is clear to me that Judge Archie Hayman, the trial judge in this case, carefully examined the evidence presented in advance of his ruling and applied the same standard to defendant and its officers as he would have applied to any party appearing before him. This is exactly what every trial judge should strive to do.

In sum, I cannot conclude that the trial court abused its discretion by denying defendant's motion for a protective order to quash the depositions of Inaba and Lentz. See *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 35, 38-39; 654 NW2d 610 (2002). Because I believe that the trial court's ruling was correct, I would affirm.