*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MALL AT BRIARWOOD, LLC,

      Petitioner-Appellant,

v

CITY OF ANN ARBOR,

      Respondent-Appellee,

and

DEPARTMENT OF TREASURY,

      Intervening Respondent-Appellee.

UNPUBLISHED
February 25, 2025
10:47 AM

No. 365726
Michigan Tax Tribunal
LC No. 21-000829-TT

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Petitioner appeals by leave granted[1] the Michigan Tax Tribunal's ("MTT") order amending a prior order to include a finding that petitioner's confidential materials were not trade secrets under MCL 445.1902(d) of the Michigan Uniform Trade Secrets Act ("MUTSA"), MCL 445.1901 *et seq.*, and denying the parties' stipulated request to file the parties' valuation disclosures under seal and for a closed hearing under the Open Meetings Act ("OMA"), MCL 15.261 *et seq.* We reverse and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner owns two parcels in Ann Arbor, Michigan, which, for purposes of this opinion, we will refer to as the Mall Parcel and the Grill Parcel. Respondent levies and collects the property taxes on both parcels. In April 2021, petitioner challenged respondent's taxable value assessment

---

[1] *Mall at Briarwood, LLC v Ann Arbor*, unpublished order of the Court of Appeals, entered November 27, 2023 (Docket No. 365726).

of its parcels, contending that respondent had "markedly over-valued" the Mall Parcel and the Grill Parcel. In June 2021, respondent answered the petition, denying petitioner's contentions. In September 2021, the Michigan Department of Treasury moved to intervene in the matter between respondent and petitioner, which the MTT later granted.

In November 2021, petitioner moved for a protective order in response to a request for discovery filed by respondent. In January 2022, the MTT conducted an *in camera* review of the documents at issue and granted petitioner's motion for a protective order under MCR 2.302(C)(8). In July 2022, the parties filed a stipulated motion to withhold the filing of their valuation disclosures until July 27, 2022. In this motion, the parties requested that the MTT issue a protective order to allow the valuation disclosures on the Mall Parcel to be filed under seal and hold the hearing regarding the Mall Parcel as a closed session under the OMA. Petitioner argued that a closed session was warranted because the information covered by the protective order constituted a trade secret under the MUTSA.

On September 9, 2022, the MTT issued an order placing the parties' July 20 stipulated motion in abeyance and stating that trade secrets submitted to the MTT were not exempt from disclosure because individual tax determinations did not involve the development of governmental policy. On October 6, 2022, the MTT issued an order removing the parties' stipulated motion from abeyance and stating that trade secrets submitted to the MTT *were* exempt from disclosure, but the documents in the January 19, 2022 protective order were not trade secrets. On October 20, 2022, the MTT held a prehearing conference with the parties and informed them that "an order amending the September 9, 2022 order would be forthcoming." On March 24, 2023, the MTT issued an order stating that trade secrets submitted to the MTT were exempt from disclosure, but because petitioner's confidential information did not derive independent economic value, it did not fall within the definition of trade secrets under the MUTSA, and a closed hearing under OMA was not warranted. Petitioner applied for leave to appeal, which we granted, and this appeal followed.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion for a protective order for an abuse of discretion. *Alberto v Toyota Motor Corp*, 289 Mich App 328, 340; 769 NW2d 490 (2010). An abuse of discretion "occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018). A tribunal's interpretation of a statute and administrative rule is reviewed de novo. *Nat'l Wildlife Federation v Dep't of Environmental Quality*, 306 Mich App 336, 342; 856 NW2d 252 (2014). A tribunal's factual findings must be "supported by competent, material, and substantial evidence on the whole record." *Wexford Med Group v City of Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006) (quotation marks and citation omitted).

## III. ANALYSIS

Petitioner argues that the MTT erroneously found in its March 24, 2023 order that petitioner's confidential materials were not trade secrets under the MUTSA and that, therefore, the MTT also erred by denying the parties' stipulated motion to hold the hearing as a closed session under OMA. We agree.

The purpose of OMA "is to promote governmental accountability by facilitating public access to official decision making and to provide a means through which the general public may better understand issues and decisions of public concern." *Herald Co, Inc v Tax Tribunal*, 258 Mich App 78, 83; 669 NW2d 862 (2003). Under the Tax Tribunal Act ("TTA"), MCL 205.701 *et seq.*, the MTT is subject to OMA. The TTA states that "[h]earings . . . shall be conducted pursuant to . . . the open meetings act." MCL 205.726. In *Herald Co*, 258 Mich App at 88-89, we stated that MCR 2.302(C) and MCL 24.273 of the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, governed the issue of protective orders before the MTT. MCR 2.302(C)(8) provides:

> (C) Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:
>
> * * *
>
> (8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; . . . .

Chapter 15 of OMA provides that "a public body may meet in a closed session" to "consider material exempt from discussion or disclosure by state or federal statute." MCL 15.268(1)(h).

The MUTSA is a state statute with the purpose "to protect certain trade secrets" and "to prohibit disclosure of trade secrets." In *Herald Co*, 258 Mich App at 89, we held that MCL 445.1902(d) provides "a workable definition of what might be considered confidential information, i.e., a 'trade secret.' " That subsection of the MUTSA provides:

> (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. [MCL 445.1902(d)(i) and (ii).]

Additionally, § 6 of the MUTSA provides:

> In an action under this act, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval. [MCL 445.1906.]

-3-

In *Radiant Global Logistics, Inc v Furstenau*, 368 F Supp 1112, 1126 (ED Mich, 2019),[2] the United States District Court for the Eastern District of Michigan provided six factors for Michigan courts to consider in determining whether information constitutes a trade secret under the MUTSA:

(1) extent to which information is known outside of owner's business, (2) extent to which information is known by employees and others involved in business, (3) extent of measures taken to guard secrecy of information, (4) value of information to owners and competitors, (5) amount of effort and money expended in developing information, and (6) ease or difficulty with which information could be properly acquired or duplicated by other.

First, petitioner argues that the MTT erroneously found that petitioner's confidential materials did "not derive or could not derive independent economic value, as required by MCL 445.1902(d)(i) and, as such, are not trade secrets within the meaning of MUTSA." More specifically, petitioner contends that the MTT erroneously applied factors four and five of the *Radiant Global Logistics* factors and erred by requiring that *all* six factors be present for the confidential information to qualify as a trade secret. In support of its argument, petitioner contends that the MTT's March 24, 2023 order is inconsistent with other court decisions under the MUTSA.

As part of its analysis in its March 24, 2023 order, the MTT quoted and discussed the six factors analyzed by the district court in *Radiant Global Logistics* in order to determine whether petitioner's confidential information was a trade secret under the MUTSA, MCL 445.1902(d). Factors one, two, three, and six concern whether information is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," MCL 445.1902(d)(ii): "(1) extent to which information is known outside of owner's business, (2) extent to which information is known by employees and others involved in business, (3) extent of measures taken to guard secrecy of information" and "(6) ease or difficulty with which information could be properly acquired or duplicated by other." *Radiant Global Logistics*, 368 F Supp at 1126. The MTT found in petitioner's favor as to these factors, stating that efforts were made to keep the information confidential, "as required by MCL 445.1902(d)(ii) . . . ."

Factors four and five concern whether the information "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," MCL 445.1902(d)(ii): "(4) value of information to owners and competitors, (5) amount of effort and money expended in developing information . . . ." *Radiant Global Logistics*, 368 F Supp at 1126. The MTT found against petitioner as to factor four, stating that "[w]hile all of the information has value to Petitioner, its value to Petitioner's competitors is speculative and inconclusive. Moreover, this type of information is regularly exchanged and made public in Tribunal proceedings," and factor five, stating that "[t]he amount of effort and money expended by Petitioner in developing this information does not appear to be any more than that of a similar

---

[2] Opinions from lower federal courts are not binding but may be considered for their persuasive value. *Truel v Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010).

-4-

enterprise." The MTT ultimately concluded "the information does not derive or could not derive independent economic value, as required by MCL 445.1902(d)(i) and, as such, are not trade secrets within the meaning of MUTSA."

"To have independent economic value, the secret information must afford the owner a competitive advantage by having value to the owner and potential competitors." *Giasson Aerospace Science, Inc v RCO Engineering, Inc*, 680 F Supp 830, 843 (ED Mich, 2010) (quotation marks and citation omitted). In *Giasson Aerospace Science*, the plaintiffs argued that their alleged trade secrets, which consisted of "(1) designs for various components of an aircraft seat; (2) vendor product and pricing information; and (3) a certification plan," had "independent economic value." *Id*. at 844. The district court held that there was sufficient evidence presented to allow a jury to conclude that the plaintiffs trade secrets had independent economic value because the trade secrets "would be of value to a competitor." *Id*.; see also *Appalachian Railcar Servs, Inc v Boatright Enterprises, Inc*, 602 F Supp 829, 853 (WD Mich, 2008) (concluding that internal pricing knowledge had independent economic value because a competitor "could use knowledge of the pricing information to craft a bid that would have a better chance of winning the new contract.").

In the present case, the information that petitioner contends is a trade secret and has independent economic value under the MUTSA includes "an appraisal report containing confidential research, and confidential commercial information, such as tenant lease information, tenant sales volumes, tenant occupancy cost information, financial operating results for the Subject Property, and other Confidential Information covered by the [January 19, 2022] Protective Order," as well as the parties' valuation disclosures, which "may also include Confidential Information covered by the Protective Order." In the brief in support of the parties' stipulated motion, petitioner argued that such information has independent economic value because the "retail industry is highly competitive" and "to protect Petitioner's ability to effectively compete in this market, Petitioner must maintain strict confidentiality of lease, income and expense information relating to the Subject Property, rent rolls and other Confidential Information by and between Petitioner and its tenants." In issuing the January 19, 2022 protective order, the MTT found that this information contained "confidential commercial information" and was subject to a protective order under MCR 2.302(C)(8). Neither respondent nor intervening respondent challenged the MTT's issuance of a protective order. Accordingly, the record supports petitioner's argument and demonstrates that this information affords petitioner a competitive advantage because it has value to petitioner and potential competitors. See *Giasson Aerospace Science*, 680 F Supp at 843.

Intervening respondent argues that the information has no value to competitors because the information is not valuable and is "several years old." However, intervening respondent provides no authority for its contention that the age of confidential information affects their classification as a trade secret under the MUTSA. Additionally, similar to the information in *Giasson Aerospace Science*, 680 F Supp at 844, the information in the present case could be of value to a competitor in the retail industry. The information in the present case is also similar to the internal pricing knowledge in *Appalachian Railcar Servs*, 602 F Supp at 853, which a competitor could use to compete with petitioner. The MTT's factual findings that petitioner's information did not derive independent economic value was not supported by substantial evidence on the whole record. See *Wexford Med Group*, 474 Mich at 201.

-5-

Furthermore, in *Learning Curve Toys, Inc v PlayWood Toys, Inc*, 342 F3d 714, 722 (2003), the Seventh Circuit held that the six factors cited in *Radiant Global Logistics* were not a "six-part test" but rather "instructive guidelines for ascertaining whether a trade secret exists . . . ." Thus, the fact that two factors did not weigh in petitioner's favor did not necessarily mean that petitioner's information did not fall within the definition of a trade secret under the MUTSA. Accordingly, the MTT abused its discretion by finding that petitioner's confidential documents did not derive independent economic value and were not trade secrets under the MUTSA. See *Alberto*, 289 Mich App at 340.

Petitioner further argues that a closed session as to this matter under OMA is warranted because the confidential information qualifies as a trade secret under the MUTSA. The TTA provides that all hearings conducted by the MTT are subject to OMA. See MCL 205.726. Chapter 15 of OMA provides that "a public body may meet in a closed session" to "consider material exempt from discussion or disclosure by state or federal statute." MCL 15.268(1)(h). "To further the purpose of the OMA, its requirements are interpreted broadly and its exemptions are interpreted narrowly." *Herald Co*, 258 Mich App at 85. The MUTSA, found in Chapter 445 of the Michigan Compiled Laws, is a state statute. MCL 445.1902(d) was used by this Court in *Herald Co*, 258 Mich App at 89, to provide "a workable definition of what might be considered confidential information, i.e., a 'trade secret,' " in issues concerning protective orders issued under MCR 2.302(C)(8). This Court cited the definition provided by the MUTSA in determining that an exemption under the Freedom of Information Act, MCL 15.231 *et seq*., did not apply to the plaintiff's confidential material and, therefore, the MTT erroneously held a closed session under OMA. *Herald Co*, 258 Mich App at 89-90.

In the present case, the MTT granted petitioner's motion for a protective order under MCR 2.302(C)(8). The fact that the confidential information qualifies as a trade secret under MUTSA— a state statute—and is, therefore, exempt from disclosure, means that the MTT, as a public body, may meet in a closed session to consider such material. See MCL 15.268(1)(h). "[A] clear and unambiguous statute leaves no room for judicial construction or interpretation." *People v Harris*, 449 Mich 332, 345; 885 NW2d 382 (2016). Therefore, the MTT abused its discretion by denying the parties' stipulated motion to hold a closed session under the OMA. See *Alberto*, 289 Mich App at 340.

We also briefly address respondent's argument that petitioner did not properly seek relief and that we did not have jurisdiction to grant petitioner's application for leave to appeal.

MCR 7.203(B) provides that we "may grant leave to appeal from":

> (3) a final order of an administrative agency or tribunal which by law is appealable to or reviewable by the Court of Appeals or the Supreme Court;

> (4) any other judgment or order appealable to the Court of Appeals by law or rule;

> (5) any judgment or order when an appeal of right could have been taken but was not timely filed.

MCL 205.753(3) provides that "[a]n order, ruling, or decision before the final decision of the tribunal is not reviewable unless leave to appeal is granted by the court of appeals." MCR 7.205(A)(1)(a) provides that an application for leave to appeal is timely if filed within 21 days after entry of the order being appealed.

Respondent argues that we do not have jurisdiction to grant petitioner's application for leave to appeal because the MTT denied petitioner's requests in the October 6, 2022 order, and if petitioner wanted to timely appeal that holding, then petitioner should have appealed within 21 days of the October 6 order, as required by MCR 7.205(A)(1)(a). This argument is irrelevant because petitioner did not appeal that order; petitioner appealed the MTT's March 24, 2023 order. We may grant leave to appeal from *any* judgment or order appealable in this Court by law or rule. See MCR 7.203(B)(4). Petitioner filed its application for leave to appeal on April 14, 2023, within the 21 days of entry of the March 24, 2023 order. By granting leave to appeal, we made the MTT's March 24, 2023 order reviewable. See MCL 205.753(3). Accordingly, respondent's argument is not persuasive.

Intervening respondent, Department of Treasury, also contends that that we did not have jurisdiction to grant petitioner's application for leave to appeal because petitioner did not properly seek relief. This argument is unpersuasive because petitioner filed an application for leave to appeal the MTT's March 24, 2023 order on April 14, 2023, which was less than 21 days after entry of the March 24, 2023 order. Accordingly, this Court does not lack jurisdiction to consider petitioner's appeal. See MCR 7.205(A)(1)(a).

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly