**Sharon D. BAINE and Michael D. Stephens, etc., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 91–T–184–S.**

United States District Court, M.D. Alabama, S.D.

Dec. 3, 1991.

See also 141 F.Supp. 328.

L. Andrew Hollis, Jr., Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, Ala., for plaintiffs.

Paul V. Cassisa, Sr., Paul V. Cassisa, Bernard, Cassisa, Saporito & Elliott, Metairie, La., Alan C. Livingston, Lee & McInish, Dothan, Ala., Robert Walter Lancaster, Chicago, Ill., for defendant.

## ORDER

CARROLL, United States Magistrate Judge.

The defendant, General Motors Corporation, has moved for a protective order to quash the deposition notice of Edward H. Mertz, a vice president of the corporation. Mr. Mertz had, in 1976, written a memorandum distributed to 18 General Motors employees that described his observations of the performance of a 1978 prototype vehicle's restraint system. These observations were based on his experience of having driven the car for several days. Plaintiffs' counsel is interested in the subject matter of that memorandum, contending for its relevance to the instant suit in which it is alleged that the restraint system failed and thereby contributed to pain and death of plaintiffs' decedent, who was wearing a seatbelt which had the allegedly defective "comfort feature" at the time of the rear-end collision. Defendant argues by motion to quash filed September 12, 1991 that deposing Mr. Mertz would be burdensome, inconvenient, duplicative, and premature. Plaintiffs have similarly given notice that they would depose each of the 18 recipients of the Mertz memorandum. Defendants argue that this, too, would be burdensome, inconvenient, and duplicative. An evidentiary hearing on several pending discovery motions was held September 19, 1991, and

the parties presented some very brief argument for the court on the issues related to depositions. Since this essentially recapitulated the arguments in the parties' briefs, the court feels comfortable ruling on the deposition issues at this time and apart from the other discovery issues.

*Deposing Mr. Mertz*

■ Mr. Mertz is currently a vice president at General Motors. He is the top executive of the Buick Division. At the time the memorandum was prepared, Mr. Mertz was daily involved in General Motors' engineering activities. Defendant has vigorously opposed plaintiffs' efforts to depose Mr. Mertz. As alternatives to this deposition, defendant has offered that the plaintiffs depose instead Mr. Robert Sinke, who was a distributee of that memorandum and who heads the company's engineering analysis section. Relatedly, defendant has also suggested that plaintiff depose fewer than the total of 18 distributees of the Mertz memorandum and then decide whether deposing Mr. Mertz is still necessary. Finally, defendant points out that plaintiffs have yet to take the corporate deposition and should at least wait to see what that generates before demanding Mertz's deposition.

■ The court prefaces its analysis of the issue now before it by noting that the trial court has broad discretion in controlling the timing of discovery. *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124 (5th Cir. 1976). Additionally, the Federal Rules by their plain terms allow the court to limit discovery so as to avoid cumulation, duplication, harassment, expense and burdensomeness. *See* Fed.R.Civ.P. 26(b)(1). The discretion to limit discovery extends to imposing restrictions where the discovery sought "is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(1). The court may issue a protective order responsive to the legal issues raised by the parties where it has been demonstrated to the court's satisfaction that such an order would be appropriate. Fed. R.Civ.P. 26(c).

The legal authority is fairly unequivocal in circumstances such as these, and several cases bear a striking similarity to this one. For example, in *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I.1985), plaintiffs in a products liability suit sought to depose Lee Iacocca, Chrysler's chairman, asserting that the deposition would help them to explore the factual basis of certain inculpatory statements he made in his autobiography. The court invoked Rule 26 as to convenience and burdensomeness. 106 F.R.D. at 366. It noted that Mr. Iacocca was "a singularly unique and important individual who [could] be easily subjected to unwarranted harassment and abuse." *Id.* The *Mulvey* court ordered that interrogatories be propounded instead, without prejudice to the plaintiffs' ability to depose Mr. Iacocca later if still warranted. *Id.*

Other cases focus on the personal knowledge of the witness whose deposition is sought. For example, in *Community Federal Sav. & Loan Ass'n v. FHLBB*, 96 F.R.D. 619 (D.D.C.1983), a case in which plaintiffs sought deposition testimony of several high-level agency administrators, the court held that when a party seeks to depose high-level decisionmakers who are removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has "unique personal knowledge" of the matter in issue. 96 F.R.D. at 621–622. Moreover, the court held that the unique personal knowledge must be truly unique—the deposition would not be allowed where the information could be had through interrogatories, deposition of a designated spokesperson, or deposition testimony of other persons. *Id.* Similarly, in *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383 (S.D.N.Y.1951), the moving party sought to depose a shipping company's vice president who had no personal knowledge of the shipment at issue. The court directed that subordinates with equal or greater knowledge first be deposed and held that the president could not be deposed if he could contribute nothing new to the information provided by the alternative deponents. Still another federal court has held that where the proposed deponent was, among other things, lacking personal

knowledge of the subject matter of the lawsuit, the discovering party must first propound interrogatories and then should these prove insufficient, the party could request to take the deposition without prejudice to its request. *Colonial Capital Co. v. General Motors,* 29 F.R.D. 514 (D.Conn. 1961). *See also Skookum Co. v. Sutherlin Mach. Works, Inc.,* 33 F.R.D. 19 (D.Ore. 1963).

Contrary authority can be readily distinguished on the facts. *Wal–Mart Stores, Inc. v. Street,* 754 S.W.2d 153 (Tex.1988) (per curiam), arguably supports plaintiffs' contention that the deposition of Mr. Mertz should be allowed. In that slip-and-fall case, a Texas state court allowed the plaintiff to depose Sam Walton, who had been president of Wal–Mart at the time of the accident but who was chairman at the time that the notice to depose was given. The appellate court affirmed. This case can be readily distinguished from our own, however, not only because it is without precedential value in a case in which Texas law need not control, but also because the entire case was resolved based on a construction of a Texas discovery rule involving the determination of who is an "agent or employ subject to the control of a party." 754 S.W.2d at 154. The other case that arguably supports plaintiffs' argument is *Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140 (D.Mass.1987). In that antitrust case, the court allowed plaintiffs to depose four high-ranking Ford officers after five middle managers had been deposed already. The court made clear that its express reason for allowing these depositions was that the antitrust claim absolutely required evidence of *motivation,* which could not be gathered from the depositions of the subordinates.

Finally, the leading case in this jurisdiction must be discussed. In *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979), the Eleventh Circuit upheld the decision of Judge Robert E. Varner refusing to allow the plaintiff to depose defendant Upjohn's president until after lesser-ranking employees had been deposed. Judge Varner had hoped that a "wait and see" posture would help plaintiff to discover what she needed from employees who had more direct knowledge of the facts at issue, obviating the need for deposing the corporation's president. The Eleventh Circuit, in affirming, noted that "absent extraordinary circumstances," an outright prohibition of the deposition "would likely be in error." 593 F.2d at 651. All Judge Varner did, however, was exercise his discretion to permit discovery through appropriate avenues before considering permitting the deposition of someone who was "extremely busy and [who] did not have any direct knowledge of the facts." *Id.* This was well within the court's discretion.

Applying the teaching of all of these authorities to the instant case, the court concludes that it would be inappropriate to grant permission to depose Mr. Mertz at this time. The defendant here has shown good cause why Mr. Mertz should not be deposed at this time. The court finds that deposing Mr. Mertz at this time would be oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had from Mr. Sinke, other of the distributees of the Mertz memorandum, interrogatories, or the corporate deposition. The corporate deposition has not yet been taken, and it could satisfy some of plaintiffs' needs. At the very least, it would aid in developing and refining a line of questioning. These avenues have not yet been exhausted or even pursued. It has also not been demonstrated that Mr. Mertz has any superior or unique personal knowledge of the restraint system or of the accident which led to the plaintiffs' decedent's death.

While the court is not persuaded that Mr. Mertz's celebrity rises to the level of that enjoyed by Lee Iacocca, the court does believe that his responsibilities to the corporation are of similar proportions. The court therefore, out of concern less for the potential for harassment than for the possibility of duplication, inconvenience, and burdensomeness, and relying on the authorities cited above, will issue a protective order quashing the deposition of Mr. Mertz and providing that the notice to take the

deposition testimony of Mr. Mertz be vacated without prejudice to the plaintiffs' right to take it subsequently should the alternative discovery devices discussed *infra* prove inadequate. The court will also order that, pursuant to its authority under Rule 26 to direct the course of discovery, the plaintiffs propound the necessary interrogatories before noticing the witness to take deposition testimony; that plaintiffs take the corporate deposition before noticing any deposition of Mr. Mertz; and that distributees of the Mertz memorandum who are still employed by General Motors, and who are lower in the corporate hierarchy than Mr. Mertz, be deposed before any subsequent notice to depose Mr. Mertz is given.

*Deposing the Additional 18 Distributees of the Mertz Memorandum*

 Again relying on its discretion and its duty to protect litigants under Rule 26, the court now approaches the issue of plaintiffs' desire to depose each and every recipient to whom the Mertz memorandum was circulated. The court has discretion to alter or prescribe the form of discovery. *See Colonial Capital,* 29 F.R.D. at 518; *Skookum,* 33 F.R.D. at 19. The general contours of the court's authority in the area of limiting discovery have been explained *supra* and are invoked here without a repetitive recital. The court cannot see the necessity of disrupting the productive hours of fully 18 people to query them about a memorandum they received 15 years ago when much of their recollection and informed opinion could only be cumulative. The volume of cumulation could in this case not be anything other than expensive, inconvenient, and burdensome.

 Where the depositions sought would be duplicative, a court can order the party seeking to depose to propound interrogatories to some of the witnesses instead. *Colonial Capital,* 29 F.R.D. at 518. Moreover, the court has authority to pare down the number of deponents. In *Armstrong Cork Co. v. Niagara Mohawk Power Co.,* 16 F.R.D. 389 (S.D.N.Y.1954), defendant sought to depose nine corporate officers and six members of the board. De-

scribing this as a "shotgun" approach, the court allowed deposition of three of the named persons. 16 F.R.D. at 391.

Because the court here believes that deposing 18 people would be burdensome to defendants, expensive, inconvenient and duplicative without any gain to plaintiffs' legitimate discovery needs, the court will grant defendant's motion for a protective order to quash all but three of these depositions, with the three to be deposed to be persons of plaintiffs' choosing, provided again that this order is entered without prejudice to plaintiffs' ability to subsequently notice additional recipients of the Mertz memorandum should this prove warranted. No restriction will apply to propounding interrogatories. Just as with the deposition of Mr. Mertz, the court wishes to make it crystal clear that depositions are not barred but merely postponed subject to proof of their necessity. The sequencing of the depositions taken of the distributees will be in accordance with the order issued for the Mertz deposition; these three deponents must precede any further attempt to depose Mr. Mertz.

### CONCLUSION

For the foregoing reasons and subject to the express provision that no prejudice accrue to plaintiffs' subsequent rights with regard to the subject depositions, it is ORDERED that defendants' motion for a protective order to quash the deposition of Edward H. Mertz be GRANTED. It is further ORDERED that defendants' motion for a protective order to quash the depositions of 18 additional noticed witnesses be GRANTED in part, subject to the limitations and conditions set forth in this order.