Tires that failed, resulting in property damage."

**In re BRIDGESTONE/FIRESTONE, INC. TIRES PRODUCTS LIABILITY LITIGATION.**

**No. IP 00–9373–C–B/S.**
**MDL No. 1373.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 15, 2002.

Don Barrett, Barrett Law Office Pa, Lexington, MS, Victor Manuel Diaz Jr., Podhurst Orseck Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B Levin, Cohen & Malad, William E Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for Plaintiffs.

John H Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P Byron, Bingham McHale, LLP, Indianapolis, IN, Mark Herrmann, Jones Day Reavis & Pogue, Cleveland, OH, Thomas S Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Mark Merkle, Krieg Devault LLP, Indianapolis, IN, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Colin P Smith, Holland & Knight LLP, Chicago, IL, Thomas G Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

### *ORDER ON FORD'S OBJECTION TO MAGISTRATE JUDGE'S ENTRY ON MOTION TO COMPEL THE DEPOSITION OF WILLIAM CLAY FORD, JR.*

BARKER, District Judge.

This matter is before the Court on Ford Motor Company's ("Ford") Objections to Magistrate Judge's "Entry Regarding Motion to Compel Deposition of William Clay Ford, Jr." ("Entry"). For the reasons set forth below, the Court DENIES Ford's objections, subject to the additional requirement imposed below.

### *Discussion*

On August 6, 2001, Magistrate Judge Shields granted the plaintiffs' motion to compel the deposition of William Clay Ford, Jr., who at that time was the Chairman of the Board of Ford Motor Company.[1] Magistrate Judge Shields's Entry directs Ford to produce Mr. Ford at Ford's Corporate Headquarters for deposition according to a schedule that allots state court attorneys seven hours, MDL attorneys three hours, and Firestone's attorneys one hour for questions. The Entry gives Ford one hour for cross-examination and all plaintiffs two hours for any redirect examination.

1. Mr. Ford has since assumed the position of Chief Executive Officer of Ford.

Ford maintains that Judge Shields's Entry is clearly erroneous and contrary to law, and therefore should be set aside pursuant to Fed.R.Civ.P. 72(a). It argues that federal courts require, as a prerequisite to taking the deposition of an "apex" official, a showing that he or she has "unique personal knowledge" of relevant matters. Ford asserts that the plaintiffs failed to make this showing with respect to Mr. Ford. In addition, Ford claims that Magistrate Judge Shields erred in allowing the deposition despite acknowledging her "suspicion" that Mr. Ford has no unique personal knowledge relevant to this litigation.

Several factors lead us to the conclusion that Magistrate Judge Shields's order allowing the plaintiffs to take Mr. Ford's deposition is neither contrary to law nor clearly erroneous. First, the plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues. Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case. *See Six West Retail Acquisition v. Sony Theatre Management*, 203 F.R.D. 98 (S.D.N.Y.2001); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D.Mass.1987). The evidence produced by the plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture in this action. Although Ford has attempted to elevate Magistrate Judge Shields's comment that she "suspects that Ford's assertion that Mr. Ford has no unique personal knowledge relevant to this litigation is accurate" to the level of a finding inconsistent with her conclusion, we do not read so much into that comment.

Second, the cases upon which Ford relies for its position that courts impose a burden on the proponent of the deposition to demonstrate the "apex" official's unique personal knowledge stop well short of establishing a rigid rule applicable in all cases. Nearly every decision Ford has cited involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement. *See, e.g., Thomas v. IBM*, 48 F.3d 478 (10th Cir.1995)(individual employment case); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979)(individual negligence case); *Baine v. General Motors*, 141 F.R.D. 332 (M.D.Ala.1991)(individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I.1985) (individual personal injury case). Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.

We are unwilling, however, to require rigid adherence to the burdens imposed under the facts of those cases, because the circumstances here are quite different and the rationale for the severe limitations on the right to depose a high level executive is not compelling in this case. First, conduct and knowledge at Ford's highest corporate levels may well be relevant to the issues presented in this litigation. *See Six West*, 203 F.R.D. at 105, and *Travelers*, 116 F.R.D. at 142–45 (both distinguishing on this basis several of the cases Ford has relied upon). Second, the plaintiffs seek to depose Mr. Ford, not for purposes of a single personal injury case, but to depose him *once* for all of the hundreds of personal injury cases pending in the MDL, the MDL class action, and many state court cases. Indeed, it was Ford (and Firestone) who championed the (1) the consolidation of all federal cases in the MDL and (2) the coordination of MDL and state court cases, principally to achieve the efficiencies of consolidated, coordinated discovery. It seems to us that the coordinated deposition procedures outlined by Magistrate Judge Shields will serve to discourage numerous, repetitive, harassing, or abusive depositions of Mr. Ford.

Third, we find that Magistrate Judge Shields has given due deference to Mr. Ford's need to be protected from abusive deposition tactics. She ordered that the deposition be taken at Ford's headquarters and imposed strict time limits on the questioning. Moreover, the Court stands ready to impose

limits during the course of the deposition should Ford's articulated concerns—about irrelevant questions, questions on subjects about which Mr. Ford obviously has no personal knowledge, and other "grandstanding" or harassment—become a problem.

Finally, nearly all of the depositions in this case have already been conducted. The parties and the Court can therefore identify more readily the appropriate areas of questioning to be directed to Mr. Ford. For this reason, the Court imposes an additional requirement on the plaintiffs: One week before Mr. Ford's deposition, plaintiffs shall file under seal with the Court (but not serve) a list of the subjects to be covered in Mr. Ford's deposition. The purpose of this submission is not to provide the basis for a pre-deposition adjudication of the allowable scope of questioning. (The submission will be for *in camera* review only.) The purposes of the submission are (1) to aid the Court in preparing to rule on any disputes that may arise during the deposition, and (2) to promote the plaintiffs' adherence to a range of subjects the propriety of which they are prepared to defend.

### Conclusion

For all of these reasons, the Court DENIES Ford's objections to the Magistrate Judge's order compelling the deposition of William Clay Ford, Jr. One week before Mr. Ford's deposition, plaintiffs shall file under seal (but not serve) a list of the subjects to be covered in Mr. Ford's deposition.

It is so ORDERED this day of February, 2002.