724 S.E.2d 353 (2012)
STATE of West Virginia ex rel. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Petitioner
v.
Honorable David H. SANDERS, Howard G. Demory and Charlotte P. Demory; 3rd Time Trucking, LLC, and Eric Custer, Respondents.
No. 11-1514.
Supreme Court of Appeals of West Virginia.
Submitted January 25, 2012.
Decided February 24, 2012.
*356 Ancil G. Ramey, Esq., William E. Galeota, Esq., Lucien G. Lewin, Esq., Steptoe & Johnson PLLC, Huntington, WV, for Petitioner.
Robert J. Schiavoni, Esq., David M. Hammer, Esq., Hammer, Ferretti & Schiavoni, Martinsburg, WV, F. Samuel Byrer, Esq., Peter A. Pentony, Esq., Law Office of F. Samual Byrer, PLLC, Charles Town, WV, Brad D. Weiss, Esq., Kimberly S. MacCumbee, Esq., Rachelle E. Hill, Esq., Charapp & Weiss, LLP, McLean, VA, for Respondents.
WORKMAN, Justice:
This case is before the Court on a writ of prohibition brought by Massachusetts Mutual Life Insurance Company ("MassMutual") seeking to prohibit the Circuit Court of Jefferson County, West Virginia, from enforcing two Orders entered on October 26, 2011,[1] requiring Roger Crandall, President, Chief Executive Officer ("CEO"), and Chairman of MassMutual, to submit to depositions. MassMutual argues that the Orders requiring its president to submit to depositions are properly the subject of a writ of prohibition. MassMutual further argues that the Orders of the circuit court compelling the depositions of this high-ranking corporate executive, despite his lack of any personal or unique knowledge about the cases, are clearly erroneous and constitutes an abuse of the circuit court's discretion. The Court issued a Rule to Show Cause on November 22, 2011. Based upon a review of the record, the parties' briefs and arguments, and all other matters submitted before the Court, the Court issues the requested writ.

I. Facts and Procedural Background
Howard G. Demory, et al. v. Massachusetts Mutual Life Insurance Company, Case No. 11-C-131, and the related case of 3rd Time Trucking, LLC, et al. v. Massachusetts Mutual Life Insurance Company, Case No. 11-C-68, are two civil actions in a series of 412i retirement plan cases[2] filed in Jefferson County, West Virginia, against multiple defendants including MassMutual. According to the record, the Demorys filed their complaint on or about April 26, 2010. At issue in the Demory action is a $100,000 annuity purchased by Howard G. Demory and Charlotte P. Demory from MassMutual. The plaintiffs claim the transaction involved fraud and tax fraud.[3] The 412i plan must be established by an employer as the sponsor of the plan and the plan itself is then established as a separate and distinct entity with its own employer identification number for IRS tax reporting purposes. Mr. Demory, who was eighty-one years old in 2005, sold his thirty acre farm. He did not have enough money to qualify for a 412i plan and was not in a position to fund the plan for the minimum five years. According to the Respondents, MassMutual, through its agents, fabricated an employer named "Demory Farm" and an employer sponsored retirement plan named "Demory Farm Retirement Plan." The Demory Farm Retirement Plan then purchased the annuity. The Respondents claim the annuity was illegally funded with $100,000 from the capital gains from the sale of the Demorys' farm. Then, in January 2007, MassMutual, through its agents, caused the improper and illegal conveyance of the Demory Farm Retirement Plan "annuity" to an individual retirement account which it had set up for Mr. Demory. The Respondents claim that in order to make this transfer, MassMutual had to represent that the annuity was coming *357 from a qualified tax plan into another qualified tax plan.
As part of discovery, on July 14, 2011, a little more than two months after the litigation commenced, the Demorys noticed the deposition of Roger Crandall, the Chairman, President and CEO of MassMutual. On August 16, 2011, MassMutual removed the case to the United States District Court for the Northern District of West Virginia due to the bankruptcy filed by Defendant Alexandria West. On September 26, 2011, the district court remanded the case back to state circuit court. By letter dated September 29, 2011, the Respondents requested to depose Mr. Crandall.
On or about October 3, 2011, MassMutual filed motions for protective orders in both civil actions, arguing that Mr. Crandall lacked any personal knowledge of the plaintiffs' actions, and "did not have any contact with the Plaintiffs, any involvement in the subject matter of this lawsuit, or any involvement in the subject matter of any of the other lawsuits filed in Jefferson County[.]" On October 21, 2011,[4] in response, the Respondents contended that: 1) the annuity contract was signed with Mr. Crandall's facsimile signature; 2) MassMutual publicly proclaims its commitment to investigating and reporting fraud; 3) Mr. Crandall is MassMutual's "face" of compliance regarding reporting and investigating any suspected fraud or wrongdoing because he has publicly proclaimed that MassMutual is an ethical company and because, as MassMutual's president, he signs Internal Control Certifications in accordance with the Sarbanes-Oxley Act;[5] 4) Mr. and Mrs. Demory wrote a letter to Mr. Crandall regarding their dispute; and, 5) there have been similar lawsuits filed regarding the "defective 412i Plans." On October 24, 2011, MassMutual replied seeking the entry of an order with specific findings of fact and conclusions of law as contemplated by the Court in State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 508 S.E.2d 75 (1998) ("A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.").
On October 26, 2011, notwithstanding MassMutual's request for specific findings of fact and conclusions of law, the circuit court in two separate two-page Orders denied MassMutual's motions for a protective order in both the Demory and 3rd Trucking actions. Specifically, the circuit court determined that "the `Apex' deposition rule[6] is inapplicable to Mr Crandall as a fact witness having unique knowledge with regard to facts, allegations and defenses in this case[.]" It is the circuit court's rulings in these two Orders that form the basis for the instant extraordinary writ of prohibition.

II. Standard of Review
In determining whether to grant a writ of prohibition, this Court has previously held that

*358 [p]rohibition lies only to restrain inferior courts from proceeding[] in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari. Syl. Pt. 1, Crawford v. Taylor, 138 W.Va. 207, 75 S.E.2d 370 (1953).
Syl. Pt. 3, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996). Further, in examining whether to issue a writ of prohibition in cases concerning a claim that the circuit court exceeded its legitimate powers,
this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
Hoover, 199 W.Va. 12, 483 S.E.2d 12, Syl. Pt. 4, in part. Regarding discovery orders, this Court has previously held that "`[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.'" State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell, 226 W.Va. 138, 143, 697 S.E.2d 730, 735 (2010) (quoting, in part, Syl. Pt. 1, State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992)).
However, in the instant case, the circuit court's finding that Mr. Crandall was a "fact" witness was conclusory in nature and unsupported by the record. Again, all the circuit court determined was that "the `Apex' deposition rule is inapplicable to Mr Crandall as a fact witness having unique knowledge with regard to facts, allegations and defenses in this case[.]" There was not a full hearing on the motion for protective order, rather the issue was discussed in a scheduling hearing before the parties had completed the written briefing on the matter. Further, the circuit court's Orders are not supported by findings of fact and conclusions of law despite MassMutual's request for the entry of such an order in its reply brief pursuant to the Gaughan decision. 203 W.Va. at 361, 508 S.E.2d at 78, Syl. Pt. 6.

III. Argument
The sole issue before the Court is one of first impression and concerns whether a high-ranking corporate official who is without any personal or unique knowledge of the facts and circumstances of a case can be compelled to be deposed, despite the availability of other corporate witnesses and other means of discovery. MassMutual argues that the Orders of the circuit court that compel the deposition of its president, despite his lack of personal or unique knowledge of the litigation, are clearly erroneous and an abuse of the circuit court's discretion. In contrast, the Respondents aver that Mr. Crandall has unique knowledge of the subject matter in the litigation making his deposition relevant and necessary.
The Respondents noticed the deposition of Mr. Crandall as a "non-party fact witness," pursuant to the provisions of West Virginia Rule of Civil Procedure 30(b)(1). Rule 30(b)(1) provides, in pertinent part that "[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." Id. Depositions also are governed by the provisions of West Virginia Rule of Civil Procedure 26. This Court has previously acknowledged that "[t]he scope of discovery in civil cases is broad[.]" State ex rel. Shroades v. Henry, 187 W.Va. 723, 725, 421 S.E.2d 264, 266 (1992). Further, the discovery sought should be relevant in the sense that it is reasonably calculated to lead to the discovery of admissible evidence. Syl. Pt. 4, State Farm Mut. Auto. Ins. Co. v. Stephens, *359 188 W.Va. 622, 425 S.E.2d 577 (1992) ("The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried. However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence.").
Where a party, such as MassMutual, objects to the taking of a deposition, the party may seek a protective order by filing a motion pursuant to the provisions of West Virginia Rule of Civil Procedure 26(c). Rule 26(c) provides:
Upon motion by a party or by the person from whom discovery is sought, including a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) That the discovery not be had;
...
(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery....
W. Va. R. Civ. P. 26(c).
The determination of whether to allow the deposition of a high-ranking corporate executive necessarily involves an examination of what some courts have termed the apex deposition rule. The Court of Appeals of Michigan in Alberto v. Toyota Motor Corp., 289 Mich.App. 328, 796 N.W.2d 490 (2010), best described the apex deposition rule as follows:
As used by other state and federal courts, the apex-deposition rule provides that before a plaintiff may take the deposition of a high-ranking or "apex" governmental official or corporate officer, the plaintiff must demonstrate both that the governmental official or corporate officer possesses superior or unique information relevant to the issues being litigated and that the information cannot be obtained by a less intrusive method, such as by deposing lower-ranking employees. See, e.g., Baine v. Gen. Motors Corp., 141 F.R.D. 332, 334-335 (M.D.Ala., 1991).
Alberto, 796 N.W.2d at 492.
The rationale behind the adoption of this rule was aptly stated by the Michigan court in Alberto as follows:
Recognizing that the highest positions within a juridical entity rarely have specialized and specific first-hand knowledge of matters at every level of the complex organization, courts have adopted the apex-deposition rule in the corporate context to (1) promote efficiency in the discovery process by requiring that before an apex officer is deposed it must be demonstrated that the officer has superior or unique personal knowledge of facts relevant to the litigation, see Salter [v. UpJohn Co.], 593 F.2d [649] at 651 [(5th Cir.1979)], and (2) prevent the use of depositions to annoy, harass, or unduly burden the parties. See Lewelling v. [Farmers Ins. of Columbus, Inc.], 879 F.2d [212] at 218 [(6th Cir.1989)]; Baine [v. Gen. Motors Corp.], 141 F.R.D. [332] at 335-336 [(M.D.Ala.1991)]. Of course, no court has applied the apex-deposition rule to hold that an apex or high-ranking corporate officer cannot be deposed under any circumstances. And neither do we. Rather, courts have applied the rule to ensure that discovery is conducted in an efficient manner and that other methods of discovery have been attempted before the deposition of an apex officer is conducted. See, e.g., Salter, 593 F.2d at 651-652; Liberty Mut. [Ins. Co. v. Superior Court of San Mateo Co.], 10 Cal.App.4th [1282] at 1287-1289, 13 Cal.Rptr.2d 363 [(Cal.Ct.App.1992)]. Moreover, those cases adopting the apex-deposition rule in the corporate context do not shift the burden of proof, but merely require the party seeking discovery to *360 demonstrate that the proposed deponent has unique personal knowledge of the subject matter of the litigation and that other methods of discovery have not produced the desired information only after the party opposing discovery has moved for a protective order and has made a showing regarding the lack of the proposed deponent's personal knowledge and that other discovery methods could produce the required information. Cf. Crest Infiniti II, LP v. Swinton, 2007 OK 77, ¶ 17, 174 P.3d 996, 1004 (2007) (declining to adopt a form of the apex-deposition rule that shifts the burden to the party seeking discovery on the ground that the burden of showing good cause is statutorily placed on the party seeking discovery). In other words, after the party opposing the deposition demonstrates by affidavit or other testimony that the proposed deponent lacks personal knowledge or unique or superior information relevant to the claims in issue, then the party seeking the deposition of the high-ranking corporate officer or public official must demonstrate that the relevant information cannot be obtained absent the disputed deposition.
796 N.W.2d at 495.
Likewise, in Crown Central Petroleum Corp. v. Garcia, 904 S.W.2d 125 (Tex. 1995), a case upon which MassMutual relies in arguing that the Court adopt the apex deposition rule, Crown Central sought a writ of mandamus directing the trial court to vacate its orders concerning the video deposition of Henry Rosenberg, Jr., the chairman of the board and chief executive officer of the company. Id. at 126. The litigation involved a negligence action stemming from the death of a company employee from lung cancer allegedly due to asbestos exposure. Id. The plaintiffs filed a motion to require Crown Central to produce Mr. Rosenberg for a video deposition. Id. Crown Central filed a motion to quash the deposition, which was accompanied by Mr. Rosenberg's affidavit. Id. In his affidavit, Mr. Rosenberg stated that he had no personal knowledge regarding the decedent employee, his job duties, performance or any facts concerning the alleged asbestos exposure. Id. Crown Central argued that the "Plaintiffs had not exhausted less intrusive means of discovery before attempting to depose Rosenberg" and that the video deposition was sought solely for harassment purposes. Id. at 126-27. The trial court denied the Crown Central's motion, allowing the deposition to take place. Crown Central appealed.
The Texas court considered "the propriety of an `apex' deposition, the deposition of a corporate officer at the apex of the corporate hierarchy[]" by examining the law in other jurisdictions which had addressed the issue. Id. at 127. The Texas court then adopted[7] the following guidelines for addressing the problems surrounding depositions of high-ranking corporate officials:
When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. Depending upon the circumstances of the particular case, these methods could include the depositions of lower level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition *361 is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the trial court should modify or vacate the protective order as appropriate. As with any deponent, the trial court retains discretion to restrict the duration, scope and location of the deposition. If the party seeking the deposition fails to make this showing, the trial court should leave the protective order in place.
904 S.W.2d at 128.[8] The rationale for adopting the foregoing guidelines was best expressed by the California court in Liberty Mutual:
[w]e do not believe, as real party suggests, that this holding will frustrate a plaintiff's ability to penetrate high levels of corporate management in a search for truth. Specifically, we do not agree with real party that a high-level official's protestation of ignorance of a lawsuit is self-serving and automatically suspect. Lower-level officials, with some probable connection to a plaintiff's case, are not permitted to avoid deposition by filing conclusory affidavits of ignorance. (See discussion in Amherst Leasing Corporation v. Emhardt [Emhart] Corporation (D.Conn.1974) 65 F.R.D. 121, 122.) In the case of an official at the head of corporate operations, however, expressions of ignorance of a specific case or claim are not implausible. At any rate the procedure outlined above will prevent undue harassment and oppression of high-level officials while still providing a plaintiff with several less-intrusive mechanisms to obtain the necessary discovery, and allowing for the possibility of conducting the high-level deposition if warranted.
Liberty Mut., 13 Cal.Rptr.2d at 367-68.
While not all courts that have examined the issue of whether to allow the deposition of a high-ranking corporate officer have phrased such examination in terms of whether to adopt the "apex deposition rule," those courts, nonetheless, have applied similar common criteria to that set forth by the courts in Crown Central and Liberty Mutual, including whether the high-ranking corporate official has certain unique or personal knowledge and whether less intrusive methods of discovery are available.[9]See, e.g., Thomas v. Int'l Bus. Machs., 48 F.3d 478, 482-84 (10th Cir.1995) (upholding the district court's issuing a protective order concerning the deposition of the chairman of the board of directors of corporation based, in part, upon chairman's affidavit that he lacked personal knowledge regarding plaintiff's age discrimination claim, that the record did not indicate that the corporation did not make other direct supervisors of the plaintiff available for deposition, and that the date when the deposition had been noticed for would have caused a "`severe hardship.'"); Lewelling *362 v. Farmers Ins. of Columbus, Inc., 879 F.2d 212, 218 (6th Cir.1989) (upholding the district court's grant of protective order regarding the deposition of the chairman of the board of directors and chief executive officer of Farmer's Group, Inc., due, in part, to Farmers' representation that the chairman and chief executive officer had no knowledge as to facts pertaining to the plaintiffs' action); Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir.1979) (determining that where the deposition of the president of corporate drug manufacturer sought, the district court properly concluded that the plaintiffs had to depose other employees of the drug company with more knowledge of the facts in issue before deposing the corporate president); Evans v. Allstate Ins. Co., 216 F.R.D. 515, 518-519 (N.D.Okla.2003) (granting motion for protective order regarding depositions of top executive officers of insurance company where employees' affidavits indicated that they had no personal knowledge of the facts of the plaintiffs' case and that the insurer had either already provided adequate information or the information sought by plaintiffs could be obtained from other sources without deposing corporate officers); Baine v. Gen. Motors Corp., 141 F.R.D. 332, 334-36 (M.D.Ala.1991) (granting protective order regarding deposition of vice president of General Motors Corporation, who was the top executive of the Buick Division, and concluding that other methods of discovery had not been used, such as deposing other corporate employees and it had not been demonstrated that the corporate vice president had superior or unique personal knowledge of the subject matter involved in the litigation); Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I.1985) (regarding the deposition sought by plaintiffs of the Chairman of the Board of Chrysler Corporation, the district court, in refusing to allow the plaintiffs to depose the corporation's chairman, opined that "he is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse. He has a right to be protected, and the courts have a duty to recognize his vulnerability. In this case, he signed an affidavit professing ignorance to the information the plaintiffs seek; juxtaposed are the generalized damaging statements concerning Chrysler's former practices which warrant refining through discovery inquiry. Therefore, it seems to me the plaintiffs' rights will be fully protected as well as those of Mr. Iacocca, and that an orderly discovery process will be best served by resorting to interrogatories at this time, without prejudice to a subsequent oral deposition if the answers to the interrogatories so warrant.").
Some state courts, including California and Texas, have also adopted the apex deposition rule. See Liberty Mut., 13 Cal.Rptr.2d at 367; see also Monsanto Co. v. May, 889 S.W.2d 274, 277 (Tex.1994) (holding that "it is an abuse of discretion to deny a motion for protective order [sought in conjunction with a deposition of a high-ranking corporate official] when the plaintiff has failed to show: 1) that there is a reasonable indication of the officer's personal knowledge of the underlying facts of the case; and 2) that the less intrusive means of discovery have been exhausted."); In re Continental Airlines, Inc., 305 S.W.3d 849 (Tex.Ct.App.2010)(finding that plaintiffs in negligence suit against airline arising out of plane crash failed to show that the airline's CEO had any unique or superior knowledge of discoverable information and plaintiffs failed to show that less intrusive methods of discovery were inadequate to obtain information sought).
Even those courts that have allowed the depositions of high-ranking corporate officers have based the decision on criteria similar to those reflected in the apex deposition rule. For instance, in In Re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 205 F.R.D. 535 (S.D.Ind.2002), the district court was presented with the issue of whether to uphold the magistrate judge in granting a motion to compel the deposition of the chairman of the board of Ford Motor Company. Id. at 535. The case in which the deposition was sought was a products liability class action against tire manufacturer, Bridgestone, and Ford Motor Company. Id. at 535-36. The district court, in allowing the deposition of Ford Motor's chairman of the board, found that the plaintiffs presented evidence that Mr. Ford "has referred to his personal knowledge of and involvement in *363 certain relevant matters, including the Firestone recall, Explorer safety issues, and Ford's response to the tire and Explorer issues." Id. at 536. Additionally, all the other depositions in the case had taken place, so that alternative methods of discovery had been used. Id. at 537. Likewise, in Six West Retail Acquisition v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98 (S.D.N.Y.2001), the owner of movie theaters brought an action against various corporate an individual defendants alleging breach of contract and antitrust claims related to the defendants' management of three theaters, and film distribution policies. Id. at 100-01. In connection with the lawsuit, the plaintiff sought to depose the chairman and chief executive officer of Sony Corp., as well as the president of Sony USA. Id. at 101-02. Regarding these two depositions, the district court made specific findings that the plaintiff had produced sufficient evidence showing that these two high-ranking corporate officers had unique knowledge regarding the facts and issues in the case. Id. at 102-04 & 106. Moreover, the district court noted that several lower level corporate officials had been deposed prior to the plaintiff seeking the depositions of the high-ranking corporate officers. Id. at 104-05. Consequently, the district court granted the plaintiff's motion to compel the depositions. Id. at 108; see also General Star Indem. Co. v. Platinum Indem., Ltd., 210 F.R.D. 80 (S.D.N.Y.2002); Ex parte Cmty. Health Sys. Servs. Corp., 72 So.3d 595 (Ala. 2011).
In determining whether to adopt the apex deposition rule in West Virginia, it is important to note that the apex deposition rule is analogous to the approach this Court adopted for use when a party seeks to depose high-ranking governmental official. In State ex rel. Paige v. Canady, 197 W.Va. 154, 475 S.E.2d 154 (1996), the plaintiffs submitted a request under the West Virginia Freedom of Information Act for the production of certain documents pertaining to the application of state tax laws for a certain period. Id. at 155-56 475 S.E.2d at 155-56. The State Tax Commissioner denied the request and the plaintiffs filed a petition for an injunction and for declaratory judgment. Id. at 156, 475 S.E.2d at 156. During discovery, the plaintiffs sought to depose the tax commissioner and after a hearing, the circuit court required the tax commissioner to submit to deposition. Id. at 157, 475 S.E.2d at 157. The tax commissioner sought a writ of prohibition. Id.
Arguing that federal law prohibits deposing high-ranking officials, the tax commissioner maintained that the circuit court abused its discretion by ordering him to submit to deposition. Focusing on whether the deposition was unduly burdensome under the provisions of West Virginia Rule of Civil Procedure 26(c), the Court determined that "[h]ighly placed public officials are not subject to a deposition absent a showing that the testimony of the official is necessary to prevent injustice to the party requesting it." 197 W.Va. at 155, 475 S.E.2d at 155, Syl. Pt. 3. Further, the Court held that
[w]hen determining whether to allow the deposition of a highly placed public official, the trial court should weigh the necessity to depose or examine an executive official against, among other factors, (1) the substantiality of the case in which the deposition is requested; (2) the degree to which the witness has first-hand knowledge or direct involvement; (3) the probable length of the deposition and the effect on government business if the official must attend the deposition; and (4) whether less onerous discovery procedures provide the information sought.
Id., Syl. Pt. 4. The Court then concluded that there had not been a sufficient showing that the deposition of the tax commissioner was warranted and "[m]ore importantly, ... we find that the respondents [plaintiffs below] have failed to show that they could not obtain the information they seek through less onerous discovery procedures, such as written interrogatories." Id. at 162, 475 S.E.2d at 162. Thus, the Court granted the writ and prohibited the circuit court from enforcing its order requiring the tax commissioner to submit to deposition
until and unless the trial court finds that the respondents have met their burden of showing the necessity for a deposition, the court has weighed the factors required to *364 determine the necessity for such a deposition, and the court has made appropriate findings of fact and conclusions of law with respect thereto.
Id.
Just as the Court adopted a framework in Canady for analyzing the appropriateness of deposing a high-ranking public official, the Court finds it necessary to adopt an analytical framework for circuit courts to follow in assessing the propriety of depositions of high-ranking corporate officials. To that end, the apex deposition rule utilized by the Supreme Court of Texas in Crown Central provides the most complete means of assessing whether the deposition of a high-ranking corporate official is proper. Consequently, the Court holds that when a party seeks to depose a high-ranking corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the circuit court should first determine whether the party seeking the deposition has demonstrated that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the circuit court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. Depending upon the circumstances of the particular case, these methods could include the depositions of lower level corporate employees, as well as interrogatories and requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the circuit court should modify or vacate the protective order as appropriate. As with any deponent, the circuit court retains discretion to restrict the duration, scope and location of the deposition. If the party seeking the deposition fails to make this showing, the trial court should leave the protective order in place. See 904 S.W.2d at 128.
Moreover, given the nature of the circuit court's rulings regarding these apex-type depositions, the Court reiterates its prior holding regarding the need for the circuit court to enter an order setting forth specific findings of fact and conclusions of law that support the circuit court's decision if requested by a party to do so. As the Court held in syllabus point six of State ex rel. Allstate Insurance Co. v. Gaughan, 203 W.Va. 358, 508 S.E.2d 75 (1998):
A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.
Id. at 361, 508 S.E.2d at 78, Syl. Pt. 6.
The Court's adoption of the apex deposition rule in no way creates a blanket prohibition on the taking of a deposition of a high-ranking corporate official. Such an outright prohibition is not supported by the West Virginia Rules of Civil Procedure or the case law in this jurisdiction or other jurisdictions. Thus, notwithstanding the Court's imposition of an apex deposition rule to be used by the circuit court in deciding whether the deposition of a high-ranking corporate official is proper, because the circuit *365 court, in this case, did not make findings of fact nor conclusions of law, there is an insufficient basis to sustain the circuit court's denial of the protective order in the first instance.
Accordingly, the Circuit Court of Jefferson County is prohibited from enforcing its Orders entered October 26, 2011, requiring Roger Crandall, President, Chief Executive Officer, and Chairman of MassMutual, to submit to depositions.
Writ granted.
NOTES
[1] MassMutual claims that only the plaintiffs in Howard G. Demory, et al. v. Massachusetts Mutual Life Insurance Company, Case No. 11-C-131, filed a response to its motion for a protective order to prevent the deposition of Mr. Crandall. The "Plaintiffs' Response in Opposition to Defendant MassMutual's Motion for Protective Order to Prevent the Deposition of Material Fact Witness Roger Crandall" was filed on behalf of both the Demorys, as well as the plaintiffs in 3rd Time Trucking, LLC, et al. v. Massachusetts Mutual Life Insurance Company, Case No. 11-C-68, as the response references both actions.
[2] A 412i plan refers to provisions in the federal tax code. See 26 U.S.C.A. § 412(i). The current version of the tax code is found in 26 United States Code Annotated § 412(e)(3) (2006).
[3] Neither complaint in the two civil actions that are the subject of the instant appeal were made part of the record before the Court. Further, the Respondents only provide specific facts relative to the Demory action.
[4] On October 20, 2011, prior to the Respondents' response and MassMutual's reply being filed, the motion for protective order was discussed and argued at a scheduling conference before the circuit court.
[5] According to a treatise written by Edward Brodsky and M. Patricia Adamski entitled the Law of Corporate Officers and Directors: Rights, Duties and Liabilities § 23:4 (November 2011): "Section 302 of the Sarbanes-Oxley Act requires the Securities and Exchange Commission to adopt rules, applicable to reporting companies, requiring the principal executive officer or officers and the principal financial officer or officers, or persons performing similar functions, to certify each annual and quarterly report." Id. (footnote omitted).
[6] The apex deposition rule sets forth guidelines for deposing a high-ranking corporate official. The rule will be discussed in greater depth infra beginning on page nine of the opinion.
[7] The Texas court ultimately denied the writ of mandamus, without prejudice, "so that the trial court may reconsider its order denying Crown Central's motion to quash Rosenberg's deposition." 904 S.W.2d at 128-29.
[8] Specifically, the court in Crown Central modeled its guidelines to be utilized when presented with an apex deposition after the guidelines adopted by the California court in Liberty Mutual. In Liberty Mutual, the court held that

[c]onsistent with these federal decisions, we hold that when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less-intrusive methods. These would include interrogatories directed to the high-level official to explore the state of his or her knowledge or involvement in plaintiff's case; the deposition of lower-level employees with appropriate knowledge and involvement in the subject matter of the litigation; and the organizational deposition of the corporation itself, which will require the corporation to produce for deposition the most qualified officer or employee to testify on its behalf as to the specified matters to be raised at the deposition. Should these avenues be exhausted, and the plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed.
Liberty Mut., 13 Cal.Rptr.2d at 367 (citation omitted).
[9] The Fourth Circuit Court of Appeals has not discussed nor adopted an apex deposition rule. See Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118 (D.Md.2009).