# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SPAN Estate.

CATHERINE JOCK, Personal Representative for
the Estate of DANIAL W. SPAN,

        Appellee/Cross-Appellant,

v

KAYLA D. BRAHAM,

        Appellant/Cross-Appellee.

UNPUBLISHED
February 9, 2016

No.  324432
Roscommon Probate Court
LC No.  14-054623-DE

Before:  MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

Appellant Kayla D. Braham appeals as of right the probate court's order that, in part, denied her motion to vacate her late father's will, and denied her motion to amend her pleadings. Appellee Catherine Jock cross-appeals as of right the same order, which denied her motion to enforce the *in terrorem* clause (no contest provision) of the will and denied her motion for security for costs.[1]  We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the Last Will and Testament of Danial Span (the decedent).  The decedent married Judith Ann Covell on February 1, 1991, and together they had one daughter, petitioner, who was born on March 30, 1994.  The decedent and Covell divorced in 1997 and, after the decedent stipulated to the release of his parental rights, petitioner's stepfather adopted her in 2007.  In approximately 2005, the decedent began a relationship with respondent.  The decedent executed a will on December 6, 2013, the material provisions of which provided:

---

[1] Appellant was the petitioner and appellee was the respondent in the proceedings below and we refer to them as petitioner and respondent, respectively, in this opinion.

### Current Children
3. I have the following living child
   o Kayla D. Braham, of Venice, Florida.

* * *

**DISPOSITION OF ESTATE**
### Distribution of Residue
10. To receive any gift or property under this Will a beneficiary must survive me for thirty (30) days. Beneficiaries of my estate residue will receive and share all of my property and assets not specifically bequeathed or otherwise required for the payment of any debts owed, including but not limited to, expenses associated with the probate of my Will, the payment of taxes, funeral expenses or any other expense resulting from the administration of my Will. The entire estate residue is to be divided between my designated beneficiaries with the beneficiaries receiving a share of the entire estate residue. . . .

11. I direct my Personal Representative to distribute the residue of my estate as follows ("Share Allocations"):
   a. All of the residue of my estate to Catherine Jock of Houghton Lake, for their own use absolutely.

* * *

### Additional Provisions
15. I want Catherine Jock to handle all my property, vehicles and personal belongings. Catherine Jock and I were engaged to be married so therefore she knows all my wishes and plans. Catherine Jock also knows my wishes and plans for Kayla Braham after she moves out of her mothers [sic] home and starts life on here [sic] own. Catherine Jock will take care of those wishes sometime after Kayla Braham moves out.

### No Contest Provision
16. If any beneficiary under this Will contests in any court any of the provisions of this Will, then each and all such persons shall not be entitled to any devises, legacies, bequests, or benefits under this Will or any codicil hereto, and such interest or share in my estate shall be disposed of as if that contesting beneficiary had not survived me.

The decedent died on December 13, 2013, and on January 2, 2014, respondent filed an application for informal probate of the decedent's December 6, 2013 will. Petitioner objected based on her belief that the signature on the will was not the decedent's signature and alleged ambiguities in the will.

Respondent moved for summary disposition on the grounds that (1) there was no genuine issue of material fact that the signature on the will was valid, (2) the provisions of the will were clear and unambiguous, (3) under the *in terrorem* clause, petitioner forfeited any devises under the will, (4) even if the December 6, 2013 were found to be invalid, a holographic will dated November 29, 2013, which provides that respondent is receive everything, would be proffered for probate, and (5) even if the probate court were to find that both wills were invalid, petitioner would not inherit anything because she is no longer the decedent's heir at law. In support of the motion, respondent attached, *inter alia*, a copy of the November 29, 2013 holographic will and affidavits of the two individuals who witnessed the decedent's signing of the December 6, 2013

will. Both witnesses stated that the decedent executed the will on December 6, 2013, and appeared to be of sound mind and acting voluntarily.

In April 2014, petitioner sent discovery requests to respondent, which included requests for respondent to produce, *inter alia*, information relating to the decedent's treating physicians in the five-year period before his death, the original holographic will, and original and copied documents containing the decedent's handwriting. Respondent filed a motion for a protective order, arguing that petitioner's requests were improper because the documents were irrelevant or were part of a fishing expedition.

On June 2, 2014, petitioner filed a motion to postpone all motion dates and the trial date, including a request to extend discovery, which had closed on May 30, 2014. Petitioner argued that the scheduled settlement conference and trial were premature because no discovery had been conducted. She explained that settlement negotiations had delayed discovery and she would need to depose several witness, subpoena medical records, and obtain an opinion from a handwriting expert after receiving respondent's answers to interrogatories.

In her response to the motion for summary disposition, petitioner argued that the holographic will was dated and signed twice, it appeared to be altered, and several letters therein did not appear to be consistent with the decedent's handwriting samples. She further asserted that because discovery had not been completed, it was unclear whether the December 6, 2013 will was actually signed by the decedent, whether he was under undue influence when he signed it, and whether he was competent. Petitioner argued that in order to determine the validity of the decedent's signature on the December 6, 2013 will her handwriting expert would need to examine both wills and a broad sample of the decedent's writings. She argued that if the holographic will was forged, then the December 6, 2013 will was also likely forged. Petitioner also argued that the decedent may not have had sufficient mental capacity to sign the will on December 6, 2013 given (1) that he died of advanced cancer only five days later,[2] (2) respondent's claim that petitioner was disinherited, (3) the inconsistent wills and powers of attorney, and (4) the ambiguous terms of the will. Petitioner argued that the December 6, 2013 will was void because of the ambiguities. Specifically, she argued that the terms "shares," "divides," "beneficiaries," and "their" were inconsistent with the apparent distribution to respondent alone. She also argued that the paragraph 15 of the will mandated that respondent transfer some or all of the estate to petitioner at some point. She claimed that without parole evidence, however, that paragraph was meaningless. Finally, petitioner argued that the *in terrorem* clause was inapplicable and she had standing as a child and an heir of the decedent. In support of the motion, petitioner attached, *inter alia*, a copy of the holographic will and the decedent's employment application.[3] She also submitted an affidavit of her attorney, James F.

---

[2] Petitioner claimed she would need to review the medical records and perhaps depose physicians on this issue.

[3] The other exhibits attached were a letter from petitioner's counsel enclosing the first set of interrogatories, an email from respondent to petitioner, a bar journal article, a copy of the

Pagels, stating that all of the factual information referred to in petitioner's pleadings and motions were true to the best of his knowledge, information, and belief.

At a hearing held on June 9, 2014, the probate court proceeded with the motion for summary disposition, despite petitioner's claims that she had been blocked from obtaining a handwriting expert's opinion because she did not have writing samples or the original holographic will. The probate court granted the motion for summary disposition, finding that petitioner had failed to file an affidavit opposing the motion for summary disposition. The probate court indicated that petitioner's other "compelling" arguments were not before the court. Given the probate court's ruling, it found that any other will was irrelevant. The probate court granted the motion for adjournment and reopened discovery on the remaining issues.[4] The probate court granted the protective order with regard to the doctor's reports, the original holographic will, and the decedent's handwriting samples.

After respondent filed a witness and exhibit list in advance of trial, petitioner filed a motion to compel certain documents listed by respondent that had been the subject of the protective order, including the holographic will. Petitioner also filed a motion for reconsideration/to amend her pleadings/to amend the judgment/for relief from judgment based on a report from a handwriting expert who opined, in part, that the signatures on the December 6, 2013 will and the purported known signatures of the decedent were probably not written by the same person. Petitioner also argued that (1) summary disposition should not have been granted before the close of discovery, (2) affidavits are not required to oppose a motion for summary disposition, (3) she should be permitted to file an amended petition based on the handwriting expert's analysis, and (4) the handwriting expert's report constituted newly discovered evidence, evidence of fraud, and other reason justifying relief from judgment or amendment of judgment.

Respondent filed a motion to enforce the *in terrorem* clause and a motion for security for costs. In response to the motion for relief from judgment, respondent argued that the handwriting expert's report was inadmissible hearsay and petitioner did not exercise reasonable diligence to produce it before the June 9, 2014 hearing.

The probate court entered an order regarding petitioner's motion for reconsideration without a hearing. The probate court denied the motion for reconsideration under MCR 2.119(F), finding that the motion merely presented the same issues on which the court had previously ruled. The probate court found that the handwriting expert's report did not establish "palpable error." The probate court stated that the witnesses' affidavits were unequivocal and made under penalty of perjury, while the handwriting expert's was equivocal and not made under penalty of perjury. Finally, the probate court concluded that a different disposition would not result from correction of the alleged error because the affidavits filed in support of respondent's motion for summary disposition satisfied the requirement that the proponent of a will establish prima facie proof of due execution. The probate court further found that the witnesses' signatures on the attestation clause created a presumption that the will was executed in

petition, letters between the parties' attorneys, and a letter from petitioner's counsel to petitioner and her mother.

[4] The order granting summary disposition was not entered until August 12, 2014.

conformity with the recitation of that clause and it is extremely difficult to rebut such presumption.

At a subsequent hearing, the probate court ruled that the *in terrorem* clause did not apply because, at that point, petitioner was not challenging a provision of the will; instead she had challenged the signature and the decedent's capacity. On the ambiguity issue, the probate court concluded, based on the entire will, that paragraph 15 was not a devise, bequest, or requirement that the personal representative do anything. The probate court found that it was not even until petitioner moved out of her mother's house that anything was supposed to happen. The probate court stated that "if anything, if *anything*, what paragraph 15 establishes is maybe some kind of constructive trust that after the estate is probated, after [petitioner] moves out of her mother's home, that she might be entitled to something preserved for her or provided for her by way of a constructive trust." The probate court concluded that the will was unambiguous and that it was clear that the drafter intended for respondent to receive the entire distribution of his estate. The probate court granted the motion for summary disposition under MCR 2.116(C)(8), finding that petitioner failed to state a claim regarding ambiguity.

With regard to the motion to amend her pleadings, petitioner explained that the amendment would allow her to bring in the findings of the handwriting expert. She further explained that she had submitted a second report from the handwriting expert, in which the expert opined that it was "highly probable" that the December 6, 2013 will was forged after analyzing the original holographic will and the original December 6, 2013 will. The probate court denied the motion, stating that it could not imagine any amendment that would create a genuine issue of material fact or change the outcome of the case.

With regard to the motion for amendment of judgment and relief from judgment, the probate court found that the handwriting expert's opinion was equivocal and was not given under oath. The probate court noted that it did not find the different spellings of the decedent's name to be critical and there were no affidavits opposing the two witnesses to the signing of the will.

The probate court also considered respondent's request for security for costs under MCR 2.109. Petitioner argued that the court rule did not apply where the will was genuinely being contested, as the probate court found. The probate court ruled that MCR 2.109 did not apply to proceedings probating an estate, which were not a civil action.

At a hearing on October 13, 2014, the probate court supplemented its earlier ruling by stating that the clerical errors in the will did not inherently create an ambiguity. The probate court found that, regardless of any clerical errors, it could not find two possible interpretations of the will. Thereafter, the probate court entered the order finalizing the issues regarding the will. This appeal and cross-appeal ensued.

## II. JURISDICTION OVER ORDERS APPEALED

Initially, we reject respondent's argument that the Court of Appeals lacks jurisdiction to review the order granting summary disposition and the order denying the motion for reconsideration. MCR 5.801(B)(2) defines an order appealable as of right to the Court of Appeals, in part, as "a final order affecting the rights or interests of an interested person in a

-5-

proceeding involving a decedent estate." Although the orders granting summary disposition and denying petitioner's motion for reconsideration were orders affecting the rights of an interested person in a proceeding involving a decedent estate, they were not final orders. A final order is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." MCR 7.202(6)(a)(i).[5] Contrary to respondent's assertion, MCL 700.3412(1) is inapplicable because neither the order granting summary disposition nor the order denying petitioner's motion for reconsideration was "a formal testacy order under [MCL 700.3409] to [MCL 700.3411]."

The August 12, 2014 order granted summary disposition on the forgery and capacity issues, but did not resolve all of the issues pending before the court. The August 12, 2014 order expressly provided that petitioner "may proceed with her challenge to the Personal Representative's proposed distribution of the estate under the terms and conditions of the will as well as her challenge to the validity of the will for vagueness." Thus it was not a final order. See also *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013) (holding that the probate court's order granting, in part, a motion for partial summary disposition was not a final order appealable by right). The October 13, 2014 order was the final order in this case because it was the first order to dispose of the ambiguity and *in terrorem* clause issues. Petitioner timely appealed from that order, and is permitted to raise issue related to the prior orders. *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009). Thus, jurisdiction is proper.

### III. SUMMARY DISPOSITION ON THE FORGERY AND CAPACITY ISSUES AND RESPONDENT'S MOTION FOR A PROTECTIVE ORDER

On appeal, petitioner first argues that the probate court erred in granting partial summary disposition on the forgery and capacity issues because there were genuine issues of material fact and discovery was not yet closed. Relatedly, petitioner contends that the probate court's ruling on respondent's motion for a protective order should be reversed. We disagree.

We review de novo a probate court's decision on a motion for summary disposition. *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014).

> In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. The evidence submitted must be considered "in the light most favorable to the opposing party." [*McLean v City of Dearborn*, 302 Mich App 68, 73; 836 NW2d 916 (2013) (citations omitted).]

---

[5] Although this is the definition applicable in civil cases, the rules applicable in civil proceedings govern procedure in probate court, unless modified in the chapter regarding probate court. MCR 5.001(A). There is no modification of the definition of "final order" in that chapter.

We review a lower court's decision on a motion regarding discovery, including a motion for a protective order, for an abuse of discretion. *Holman v Rasak*, 486 Mich 429, 436; 785 NW2d 98 (2010); *Alberto v Toyota Motor Corp*, 289 Mich App 328, 340; 796 NW2d 490 (2010). An abuse of discretion "occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011).

MCL 700.2502(1)(b) requires that a will be "[s]igned by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction." The proponent of a will has the burden of establishing prima facie proof of due execution. MCL 700.3407(1). The presence of an attestation clause in a will "gives rise to a presumption that the will was executed in conformity with the recitations in the clause." *In re Estate of Clark*, 237 Mich App 387, 392-393; 603 NW2d 290 (1999). "This presumption may be rebutted by the competent testimony of witnesses. However, the sworn testimony of a subscribing witness that contradicts the plain language of an attestation clause will not necessarily be sufficient to rebut the presumption that the will was properly executed." *Id*. at 393 (citations omitted). MCL 700.3406(1) provides:

> If evidence concerning execution of an attested will that is not self-proved is necessary in a contested case, the testimony of at least 1 of the attesting witnesses, if within the state and if competent and able to testify, is required. Due execution of an attested or unattested will may be proved by other evidence.

A person contesting a will has the burden of establishing lack of testamentary capacity or fraud. MCL 700.3407(1)(c).

The December 6, 2013 will contained an attestation clause, which provided that the decedent signed the will on December 6, 2013, in the presence of two witnesses. Thus, a presumption arose that the will was executed in conformity with the recitations of that clause. See *In re Estate of Clark*, 237 Mich App at 392-393. In support of her motion for summary disposition, respondent also submitted affidavits of both witnesses, who stated that the decedent signed the will voluntarily and while of sound mind. Although petitioner argues that the probate court improperly relied on the affidavits and that the testimony of one of the attesting witnesses was required under MCL 700.3406(1), petitioner produced no evidence in response to the motion for summary disposition rebutting the presumption that the will was executed in conformity with the attestation clause. See *In re Estate of Clark*, 237 Mich App at 393. The documents submitted by petitioner, including the decedent's employment application in which he signed "Daniel" rather than "Danial", a copy of the holographic will, and the affidavit of her counsel,[6] did not create a genuine issue of material fact on the issue of whether the signature was forged.

---

[6] "Generally, attorney affidavits . . . which state that the attorney read the motion and that its contents are true are insufficient to support the motion for summary judgment." *North River Ins Co v Endicott*, 151 Mich App 707, 714; 391 NW2d 454 (1986).

Thus, further evidence concerning execution was not required. With regard to petitioner's burden of establishing lack of capacity, petitioner also failed to produce any evidence establishing a genuine issue of material fact. Therefore, the probate court properly granted summary disposition on signature and capacity issues based on the evidence before it.

Given its ruling on the motion for summary disposition, the probate court did not abuse its discretion in granting the protective order as to several items requested by petitioner, including the original holographic will, writing samples, and doctor's reports. Since there was no triable issue regarding the signature and the decedent's capacity, those documents were not relevant.

With regard to petitioner's claim that summary disposition was improper because discovery was not completed, the record establishes that discovery was officially closed on May 30, 2014, before the probate court ruled on the motion for summary disposition. Petitioner had, however, filed a motion to postpone, which was before the probate court on the date of the summary disposition hearing. Nonetheless, the probate court refused to address petitioner's motion to postpone before ruling on the motion for summary disposition, despite petitioner's arguments that she needed writing samples and original holographic will for her handwriting expert to analyze. Petitioner's motion to postpone also stated that she would need to obtain the decedent's medical records and depose witnesses. The probate court recognized that petitioner's arguments were compelling, erroneously believed that those issues were not before the court, and, by not ruling on the issues, effectively denied the motion to postpone discovery relating to the signature and capacity issues.

However, even if the probate court abused its discretion in denying the motion to postpone, the error was harmless. See MCR 2.613(A). "[A] motion under MCR 2.116(C)(10) is generally premature if discovery has not closed, unless there is no fair likelihood that further discovery would yield support for the nonmoving party's position." *Ensink v Mecosta Co Gen Hosp,* 262 Mich App 518, 540; 687 NW2d 143 (2004) (citation and quotation marks omitted). As noted, in this case discovery had already closed, and, regardless, there was no fair likelihood that further discovery would have yielded support for petitioner's position. With regard to the capacity issue, petitioner offers nothing more than speculation that the decedent's doctors' reports or the depositions of those doctors would reveal information helpful to her position, i.e., that decedent lacked the capacity to execute the will on December 6, 2013. See *id.* Similarly, petitioner only speculates that the witnesses to the will would have provided testimony, if deposed, that differed from the statements in their affidavits. See *id.* With regard to the forgery issue, petitioner was later able to obtain a handwriting expert's opinion based on the original wills and handwriting samples, but, as discussed below, the handwriting expert's report would not have changed the outcome of the probate court's ruling on the motion for summary disposition.

## IV. PETITIONER'S MOTIONS TO AMEND JUDGMENT, FOR RELIEF FROM JUDGMENT, AND TO AMEND PLEADINGS

Next, petitioner argues that the probate court erred by denying her motion to amend the judgment, for relief from judgment, or to amend her pleadings. We disagree.

We review a decision on a motion for relief from judgment for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). We also review a decision on a party's motion to amend its pleadings for an abuse of discretion. *Decker v Rochowiak*, 287 Mich App 666, 681; 791 NW2d 507 (2010). "An abuse of discretion occurs when the decision results in an outcome that falls outside the range of principled outcomes." *Id*.

Petitioner sought relief from judgment under MCR 2.612(C)(1)[7] based on the following grounds:

> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

> * * *

> (f) Any other reason justifying relief from the operation of the judgment.

In order for newly discovered evidence to support a motion for relief from judgment, four requirements must be met:

> (1) the evidence, not simply its materiality, must be newly discovered, (2) the evidence must not be merely cumulative, (3) the newly discovered evidence must be such that it is likely to change the result, and (4) the party moving for relief from judgment must be found to have not been able to produce the evidence with reasonable diligence. [*South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 655; 625 NW2d 40 (2000).]

With regard to a claim of fraud in support of a motion for relief from judgment, this Court has stated:

> Where a party has alleged that a fraud has been committed on the court, it is generally an abuse of discretion for the court to decide the motion without first conducting an evidentiary hearing regarding the allegations. An evidentiary hearing is necessary where fraud has been alleged because the proof required to sustain a motion to set aside a judgment because of fraud is "of the highest order." [*Kiefer v Kiefer*, 212 Mich App 176, 179; 536 NW2d 873 (1995) (citations omitted).]

---

[7] Petitioner also sought to amend the judgment under MCR 2.611, but that provision does not apply where, as here, there was no trial. Although the probate court also ruled on MCR 2.119(F) regarding motions for rehearing or reconsideration, petitioner does not argue on the basis of that court rule on appeal.

However, this Court has also stated that "[w]here the truth of fraud allegations can be determined without reference to demeanor, we do not believe that the law requires a trial court to devote its limited resources to an in-person hearing." *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). This Court noted that:

> the trial court itself is best equipped to decide whether the positions of the parties (as defined by the motion and response, as well as by the background of the litigation) mandate a judicial assessment of the demeanor of particular witnesses in order to assess credibility as part of the fact-finding process. Some motions undoubtedly will require such an assessment, e.g., situations in which "swearing contests" between two or more witnesses are involved, with no externally analyzable indicia of truth. Other motions will not, e.g., situations in which ascertainable material facts are alleged, such as the contents of a bank account on a particular day. [*Id.*]

> In order for relief to be granted under MCR 2.612(C)(1)(f), three requirements must be met:

> (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. Generally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. [*Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999) (citations omitted).]

> With regard to the amendment of pleadings, MCR 2.116(I)(5) provides:

> If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified.

This court rule requires the court to provide the nonmoving party the opportunity to amend their pleadings, unless the amendment would be futile. *Ghanam v Does*, 303 Mich App 522, 543; 845 NW2d 128 (2014).

The probate court denied petitioner's motions based on its finding that the handwriting expert's opinion was equivocal and was not under oath. We conclude that the probate court did not abuse its discretion in denying the motion for relief from judgment under MCR 2.612(C)(1)(b) because the handwriting expert's report would not likely have changed the result of the summary disposition ruling. See *South Macomb Disposal Auth*, 243 Mich App at 655. Although the weight given to the testimony of a handwriting expert is for the trier of fact, *In re Skoog's Estate*, 373 Mich 27, 29; 127 NW2d 888 (1964); *In re Harris' Estate*, 260 Mich 358, 360; 244 NW 502 (1932), a handwriting expert's unsworn report proffering his opinion is not sufficient to oppose a motion for summary disposition. See *Marlo Beauty Supply, Inc v Farmers*

*Ins Group of Cos*, 227 Mich App 309, 321; 575 NW2d 324 (1998) (holding that the trial court erred in relying on a handwriting expert's unsworn opinion letter to resolve a disputed question of fact).

> Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in a motion for summary disposition pursuant to MCR 2.116(C)(10) must be filed with the motion. The affidavits must be made on the basis of personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion. Opinions, conclusionary [sic] denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact, or the lack of it, must be established by admissible evidence." [*Id.* (citations omitted).]

Similarly, in responding to a motion for summary disposition, "an adverse party . . . must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." MCR 2.116(G)(4). Petitioner's handwriting expert's report, which proffered the expert's unsworn opinion, did not create a genuine issue for trial. Therefore, the probate court did not abuse its discretion in denying the motion for relief from judgment on the basis of newly discovered evidence.

Although not expressly addressed by the probate court, we conclude that relief from judgment was not warranted under MCR 2.612(1)(c) or (f). Petitioner's allegation of fraud rested on the handwriting expert's opinions, which the probate court found to be equivocal. While not argued by petitioner, we conclude that an evidentiary hearing regarding the allegations of fraud was not required because it was not necessary for the probate court to consider the demeanor of the handwriting expert in order to assess the credibility of the fraud allegations. See *Williams*, 214 Mich App at 399. Assuming none of the other subsections of MCR 2.612(1) applied, we nonetheless conclude that relief from judgment was not warranted under MCR 2.612(1)(f) because petitioner does not allege any extraordinary circumstances and there is no evidence that summary disposition was obtained by the improper conduct of respondent. See *Heugel*, 237 Mich App at 478-479.

Finally, given that the handwriting expert's reports would not have changed the outcome of summary disposition, the probate court properly determined that amendment would be futile. See *Ghanam*, 303 Mich App at 543. Therefore, the probate court did not abuse its discretion in denying petitioner's motion to amend her pleadings.

## V. SUMMARY DISPOSITION ON THE AMBIGUITY ISSUE

Petitioner contends that the probate court erred in granting summary disposition in favor of respondent on the ambiguity issue. We disagree.

> This Court reviews de novo a circuit court's summary disposition ruling. A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint

solely on the basis of the pleadings. When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. Summary disposition on the basis of subrule (C)(8) should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. [*Dalley v Dykema Gossett*, 287 Mich App 296, 304-305; 788 NW2d 679 (2010) (citations omitted).]

In interpreting the language of a will,

[t]he role of the probate court is to ascertain and give effect to the intent of the testator as derived from the language of the will. Where there is no ambiguity, that intention is to be gleaned from the four corners of the instrument. A patent ambiguity exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language. A latent ambiguity exists where the language and its meaning is clear, but some extrinsic fact creates the possibility of more than one meaning. [*In re Woodworth Trust*, 196 Mich App 326, 327-328; 492 NW2d 818 (1992) (citations omitted).]

Petitioner argues that the probate court erred in finding that the will was unambiguous. Specifically, petitioner argues that paragraphs 3, 10, 11, 15, and 16 are internally contradictory and inconsistent with one another and that the probate court erred in (1) finding that the terms "divided", "share", "their", and "beneficiaries" were typographical errors, (2) failing to give meaning to the explicit references to petitioner and the implicit reference to petitioner in the *in terrorem* clause, and (3) finding that paragraph 15 was merely a suggestion that respondent take some action.

We conclude that the probate court did not err in ruling as a matter of law that the will unambiguously devised the decedent's estate to respondent. This is clear from the language of paragraph 11. Despite the use of the term "their" in that provision and elsewhere in the will, as well as the use of other "plural" terms, the will is not susceptible to two or more meanings. Moreover, the references to petitioner as the decedent's daughter in paragraphs 3 and 15 do not imply or indicate that she is a beneficiary and, therefore, do not create any ambiguity in the provision distributing the entire residue of the estate to respondent.[8] With regard to the *in terrorem* clause, we disagree with petitioner's suggestion that the clause would be meaningless if there were only one beneficiary of the will. The *in terrorem* clause is not meaningless if respondent is the only beneficiary because if respondent is precluded from taking under the will,

---

[8] Although not raised by either party, paragraph 13 of the will expressly provides: "If I have omitted to leave property in this Will to one or more of my heirs as named above the failure to do so is intentional except as otherwise expressly provided in this my [sic] Will."

then there would be no beneficiaries and decedent's estate would pass under the laws of intestate succession.

Finally, the probate court did not err in concluding that paragraph 15 was merely a precatory clause that did not mandate that respondent do anything. Although the paragraph indicates that respondent "will" take care of decedent's wishes for petitioner, it does not mandate or direct her to do anything. Cf. *In re McKay's Estate*, 357 Mich 447, 451-451; 98 NW2d 604 (1959) (concluding that language in which the testator "request[ed]" that three charities share in her estate was intended as a direction). Rather, that language is akin to the language in *Ivanoff v Johnson*, 6 Mich App 272, 273-274, 276; 148 NW2d 882 (1967), in which the testator "wish[ed]" that his daughter would fairly and equitably distribute the property among family members. Such language was found to "manifest[] an intention to impose a moral obligation on [the daughter] but leaves her free of any legal obligation to apply the property as suggested by her father. Such language creates no trust and [the daughter] takes the property for her own benefit." *Id*. at 276. Because paragraph 15 did not require respondent to do anything, extrinsic testimony was not required to determine the decedent's wishes.[9] The probate court did not err in granting summary disposition in favor of respondent regarding the terms of the will.

## VI. CONSTRUCTIVE TRUST

Petitioner argues that if the will is not void, then the probate court must take testimony concerning the terms of the "testamentary trust" created in favor of petitioner [Petitioner's Brief on Appeal, pp 45-46]. We disagree.

As noted, the probate court did not find that the will created a testamentary trust in favor of petitioner. Rather, it stated that "if anything, if *anything*, what paragraph 15 establishes is maybe some kind of constructive trust that after the estate is probated, after [petitioner] moves out of her mother's home, that she might be entitled to something preserved for her or provided for her by way of a constructive trust." Therefore, this issue was not decided by the probate court and is unpreserved. See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). We decline to address this unpreserved issue for the additional reason that the probate court found that the provision would only apply, if at all, once petitioner moves out of her mother's home and there is no evidence that she has done so.

## VII. *IN TERROREM* CLAUSE

On cross-appeal, respondent contends that if this Court reverses any of the probate court's rulings and determines that petitioner was a beneficiary, then it should also determine that the probate court improperly denied the motion to enforce the *in terrorem* clause. Given that we have not reversed any of the probate court's rulings related to the will or determined that

---

[9] Contrary to petitioner claim that the probate court conceded that paragraph 15 created a testamentary trust for petitioner, the probate court did not make such a finding. Rather, the probate court stated that "if *anything*, what paragraph 15 establishes is maybe some kind of constructive trust."

petitioner was a beneficiary, we need not address this issue because the *in terrorem* clause applies to beneficiaries under the will.

## VIII.  SECURITY FOR COSTS

Finally, respondent contends that the probate court improperly denied the motion for security for costs by erroneously concluding that MCR 2.109 only applied to civil actions.[10]  We agree, but nonetheless conclude that security for costs was not warranted.

We review a decision to grant security for costs for an abuse of discretion.  *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997).  The interpretation of a court rules is a question of law that we review de novo.  *Wilcoxon v Wayne Co Neighborhood Legal Servs*, 252 Mich App 549, 553; 652 NW2d 851 (2002).

MCR 2.109(A) provides:

> On motion of a party against whom a claim has been asserted *in a civil action*, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts.  The court shall determine the amount in its discretion. MCR 3.604(E) and (F) govern objections to the surety.  [Emphasis added.]

Under the plain language of MCR 2.109(A), the court rule applies to civil actions.  Under MCR 2.101(B), "A civil action is commenced by filing a complaint with a court."  The proceedings below were not commenced by the filing of a complaint, but by the filing of a petition.  Accordingly, the proceedings below did not constitute a civil action.

Respondent, however, cites MCR 5.001(A), which provides that "[p]rocedure in probate court is governed by the rules applicable to other civil proceedings, except as modified by the rules in this chapter."  There is no modification of MCR 2.109 is the chapter regarding probate court proceedings.  Accordingly, we agree with respondent that the probate court erred in concluding that MCR 2.109 did not apply to the proceedings before it.

Nonetheless, we conclude that security was not warranted in this case.  "Security should not be required unless there is a substantial reason for doing so.  A 'substantial reason' for requiring security may exist where there is a 'tenuous legal theory of liability,' or where there is good reason to believe that a party's allegations are 'groundless and unwarranted.' "  *In re Surety Bond for Costs*, 226 Mich App at 331-332 (citations omitted).  Although the probate court rejected petitioner's claims regarding the will, and we affirm those rulings, there is not good

---

[10] Although respondent also mentions the denial of expenses and attorney fees, she has abandoned any claim related to expenses and attorney fees by failing to brief the issue.  See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

reason to believe that petitioner's allegations were groundless or unwarranted, and they were not based on a tenuous legal theory of liability. Petitioner's challenges to the signature on the will, the decedent's capacity, and the interpretation of the will were reasonable and not frivolous. Thus, respondent's motion for security for costs was properly denied.

Affirmed. No costs taxes, as neither party prevailed in full. MCR 7.219.

/s/ William B. Murphy
/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello